569-07/DPM/MAM
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiffs
GRANVILLE NAVIGATION S.A.
80 Pine Street
New York, NY 10005
Telephone: (212) 425-1900 / Facsimile: (212) 425-1901
Don P. Murnane, Jr. (DM 3639)
Manuel A. Molina (MM 1017)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GRANVILLE NAVIGATION S.A.,                           07 CIV.        (    )

                          Plaintiff,                 **VERIFIED COMPLAINT**

          -against-

TRANSGRAIN SHIPPING (SINGAPORE) PTE. LTD.,

                          Defendant.
------------------------------------------------------------------x

Plaintiff GRANVILLE NAVIGATION S.A. ("GRANVILLE"), by its attorneys Freehill Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant TRANSGRAIN SHIPPING (SINGAPORE) PTE. LTD. (hereinafter "TRANSGRAIN"), alleges upon information and belief as follows:

1.  This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure in that it involves a claim for breach of a maritime charter party contract. The case also falls within this Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. §1333, *et seq.* and / or the Arbitration Act, 9 U.S.C. §1 *et seq.* and /or §201 *et seq.* and this Court's federal question jurisdiction pursuant to 28 U.S.C. §1331.

2.  At all times relevant hereto, GRANVILLE was and still is a foreign business entity organized and existing under the laws of a foreign country, with an office and place of business at 80 Broad Stret, Monrovia Liberia. GRANVILLE is the registered owner of the vessel M/V CAMEL.

NYDOCS1/293106.1

3.  At all times relevant hereto, TRANSGRAIN was and still is a business entity organized and existing under the laws of a foreign country, with an office and place of business at 158 Cecil Street #09-01, Dapenso Building, Singapore 069545.

4.  On or about August 29, 2007, GRANVILLE, as owner of the M/V CAMEL, entered into a maritime contract on an amended SYNACOMEX 90 charter party form with TRANSGRAIN, as charterer, for the use and operation of the vessel ("the Charter Party").

5.  The Charter Party between GRANVILLE and TRANSGRAIN contemplated two consecutive voyages for the carriage of barley in bulk from the Black Sea to either Yanbu, Jeddah or Gizan Ports at TRANSGRAIN's option.

6.  The Charter Party also stipulated that TRANSGRAIN would pay GRANVILLE a $200,000 ballast bonus upon delivery of the M/V CAMEL to TRANSGRAIN after sailing from the port of Dajeh, India.

7.  Pursuant to the terms of the Charter Party, GRANVILLE instructed the M/V CAMEL to proceed to the port of Novorrosiysk or Odessa or Sevastopol or Tuapse (in the Black Sea) in TRANSGRAIN's option. However, as the vessel was en route to the Black Sea, TRANSGRAIN wrongfully cancelled the Charter Party.

8.  GRANVILLE has met all of its obligations to TRANSGRAIN pursuant to the terms and conditions of the Charter Party.

9.  As a result of TRANSGRAIN's unlawful cancellation of the Charter Party, GRANVILLE has suffered the following damages: (a) the ballast bonus of $200,000 which TRANSGRAIN had agreed to pay GRANVILLE after sailing from the port of Dajeh; (b) the cost of the vessel's passing through the Suez Canal while en route to the Black Sea, which cost amounts to $140,582.00; (c) the cost of bunkers consumed by the vessel during its transit to the Black Sea, which cost amounts to $188,706.00; and (d) the lost profits for the period of time

during which the vessel was unemployed and during which GRANVILLE sought to fix the vessel to new Charterers, which loss of profits is calculated at $408,047.45, or 14.830 days (the lost time) x $27,515 (the differential between the freight which TRANSGRAIN would have paid under the Charter Party and the freight actually paid by the new Charterers under the substitute fixture of the vessel).

10. GRANVILLE has repeatedly demanded payment from TRANSGRAIN in the sum of $937,335.45. TRANSGRAIN, however, in breach of the Charter Party, has refused or has otherwise failed to pay the demanded amount.

11. In the past, Defendant TRANSGRAIN has arranged and/or has otherwise directed that payments or other funds which were due to GRANVILLE and owed by TRANSGRAIN be paid by TRANSGRAIN's agent and/or paying agent Concordia Agritrading Pte. Ltd. In fact, Concordia Agritrading Pte. Ltd. made payments on behalf of TRANSGRAIN on the following dates in 2007: April 2, May 8, May 29, June 4, June 12 and July 9.

12. Pursuant to the terms of the Charter Party contract, all disputes are subject to London arbitration, with English law to apply. GRANVILLE has commenced arbitration proceedings against TRANSGRAIN in London. GRANVILLE specifically reserves its right to arbitrate the merits of its dispute with TRANSGRAIN pursuant to the terms of the Charter Party.

13. This action is brought in order to o is brought to obtain jurisdiction over TRANSGRAIN and to obtain security in favor of GRANVILLE in respect to its claims against TRANSGRAIN, including but not limited to interest, GRANVILLE's anticipated attorneys' fees and costs in the arbitration, all of which are recoverable as part of the Plaintiff's main claim under English law.

14. After investigation, Defendant TRANSGRAIN cannot be "found" within this District for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime

Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant or as may be held, received or transferred for its benefit in the name of its paying agent Concordia Agritrading Pte. Ltd. at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein.

15. As nearly as presently can be computed, the total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims by GRANVILLE against TRANSGRAIN includes:

(a) GRANVILLE's claim for the lost ballast bonus in the sum of $200,000.00;

(b) GRANVILLE's claim for the cost of the vessel's passing through the Suez Canal in the sum of $140,582.00;

(c) GRANVILLE's claim for the cost of bunkers consumed by the vessel en route to the loading port in the sum of $188,706.00;

(d) GRANVILLE's claim for lost profits sustained stemming from the cancellation of the Charter Party in the sum of $408,047.45;

(e) Interest in the amount of $183,359.85, calculated on the above sums at the rate of 6% per annum, compounded quarterly, for three years, the estimated time it will take to obtain a final arbitration award, which interest is recoverable under English law; and

(f) Legal fees, arbitrator fees and costs that will be incurred by Plaintiff in respect to the London arbitration which are recoverable pursuant to English law and which English solicitors estimate to be in the sum of $100,000.00.

16.   Based upon the foregoing, the total amount GRANVILLE seeks to attach in this action, pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, is **$1,220,695.30.**

W H E R E F O R E, Plaintiff GRANVILLE NAVIGATION S.A. prays:

a. That process in due form of law according to the practice of this Court may issue against Defendant TRANSGRAIN SHIPPING (SINGAPORE) PTE. LTD., citing it to appear and answer the foregoing, failing which a default will be taken against it for the principal amount of the claim of $937,335.45, plus interest, costs and attorneys' fees;

b. That if the Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant as described herein, up to and including the amount of the claims of **$1,220,695.30** be restrained and attached, including, but not limited to any cash, funds, credits, debts, wire transfers, accounts, letters of credit, freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due, held or being transferred to or for the benefit of the Defendant or as may be held, received or transferred for its benefit in the name of its paying agent CONCORDIA AGRITRADING PTE. LTD. at, moving through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Attachment issued herein;

c. That the Court enter an order directing Defendant to appear and respond in arbitration as required, or, to the extent an award is rendered against the Defendant, to confirm that award as a judgment of this Court; and

d.  That Plaintiff have such other, further and different relief as this Court may deem just and proper.

Dated: New York, New York
       November 6, 2007

>   FREEHILL HOGAN & MAHAR, LLP
>   Attorneys for Plaintiff
>   GRANVILLE NAVIGATION S.A.
>
>   By: *Manuel A. Molina*
>   Don P. Murnane, Jr. (DM 3639)
>   Manuel A. Molina (MM 1017)
>   80 Pine Street
>   New York, NY  10005

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

Manuel A. Molina, being duly sworn, deposes and says:

1. I am an attorney with the law firm of Freehill Hogan & Mahar, LLP, attorneys for the Plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2. The sources of my information and the grounds for my belief are communications from our client and documents provided by our client regarding this claim.

3. The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within the State of New York.

_____
Manuel A. Molina

Sworn to before me this
6 th day of November, 2007

_____
NOTARY PUBLIC

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009