LAW OFFICES OF
## FREEHILL HOGAN & MAHAR LLP
80 PINE STREET
NEW YORK, N.Y. 10005-1759

TELEPHONE (212) 425-1900
FACSIMILE (212) 425-1901

E-MAIL: reception@freehill.com
www.freehill.com

GEORGE B. FREEHILL
WILLIAM L JUSKA, JR
JAMES L ROSS*
ERIC E. LENCK
JOHN J WALSH*
PATRICK J. BONNER*
PETER J. GUTOWSKI
MARK F MULLER
WAYNE D MEEHAN*
DON P. MURNANE, JR △
THOMAS M RUSSO
THOMAS M CANEVARI†
MICHAEL FERNANDEZ*
JOHN F KARPOUSIS*△
MICHAEL E UNGER*†
WILLIAM J. PALLAS*
GINA M VENEZIA*△
BARBARA G CARNEVALE*
MANUEL A MOLINA
LAWRENCE J KAHN*
JUSTIN T NASTRO*
PAMELA L SCHULTZ*◊
DANIEL J FITZGERALD*†△
JILL A TAFT
MICHAEL C. ELLIOTT*

* ALSO ADMITTED IN NEW JERSEY
† ALSO ADMITTED IN CONNECTICUT
.. ALSO ADMITTED IN WASHINGTON, D C
◊ ALSO ADMITTED IN LOUISIANA

NEW JERSEY OFFICE
850 BERGEN AVENUE
JERSEY CITY, N J 07306
TELEPHONE (973) 623-5514
FACSIMILE (973) 623-3813

CONNECTICUT OFFICE
23 OLD KINGS HIGHWAY SOUTH
DARIEN, CT 06820-4538
TELEPHONE (203) 921-1913
FACSIMILE (203) 358-8377

[Stamp: USDS SDNY DOCUMENT ELECTRONICALLY FILED DOC #: ___ DATE FILED: 11/15/07]

[Handwritten endorsement: "11/14/07 I agree with Judge Sweet and will not be altering the terms of the attachment order." MEMO ENDORSED [signature] USDJ]

November 13, 2007

569-07/DPM/MAM

**BY HAND**

Hon. Colleen McMahon
United States District Judge
United States Courthouse
500 Pearl Street, Room 640
New York, New York 10007-1312

Re:    Granville Navigation S.A. v. Transgrain Shipping (Singapore) Pte. Ltd.
       07 Civ 9823 (CM)

Dear Judge McMahon:

We represent Plaintiff Granville Navigation S.A. in the captioned action which involves a maritime claim for breach of a charter party contract for the use and operation of the vessel M/V CAMEL and an attachment under Supplemental Rule B. On November 8, 2007, in Your Honor's absence, Judge Sweet reviewed Plaintiff's application for the issuance of a writ of maritime attachment. While Judge Sweet granted the application, he denied Plaintiff's request to include the entity Concordia Agritrading Pte. Ltd. ("Concordia") as a paying agent corporation that holds, transfers and/or receives attachable assets of the Defendant Transgrain Shipping (Singapore) Pte. Ltd. ("Transgrain").[1] (A copy of the Order is annexed hereto as Exhibit A). We write to respectfully request that Your Honor consider and grant our application to amend the Process of Maritime Attachment and Garnishment ("PMAG") to include Concordia as a paying agent corporation for Transgrain.

---

[1] The concept of paying agent is based upon the general principles of agency. In the maritime context, it is common practice for owners and/or charterers to utilize agents for the receipt of and/or payment of freight or hire. *Tarstar Shipping Co. v. Century Shipline Ltd.*, 451 F.Supp. 317, 324 (S.D.N.Y. 1978) (discussing the concept of "paying agent" in the maritime industry). As a consequence, these "paying agents" are often transferring sums from accounts in their own name, or receiving assets in accounts in their name, but they have no "interest" in the funds - the property interest being with the principal on whose behalf the funds are either being paid or received.
NYDOCS1/293626 1

November 13, 2007
Page 2

The Verified Complaint in this case avers that:

11. In the past, Defendant TRANSGRAIN has arranged and/or has otherwise directed that payments or other funds which were due to GRANVILLE and owed by TRANSGRAIN be paid by TRANSGRAIN's agent and/or paying agent Concordia Agritrading Pte. Ltd. In fact, Concordia Agritrading Pte. Ltd. made payments on behalf of TRANSGRAIN on the following dates in 2007: April 2, May 8, May 29, June 4, June 12 and July 9. (Copy of the Verified Complaint is annexed hereto as Exhibit B).

We annexed hereto as Exhibit C the documentation that supports the factual allegations contained in paragraph 11 of the Verified Complaint. That documentation clearly demonstrates that Defendant Transgrain has, on many occasions, used Concordia to pay Transgrain's debts to the tune of $3,256,361.60:

- On March 30, 2007, Plaintiff presented a Freight Invoice to Transgrain for the sum of $1,046,735.75 in connection with a February 21, 2007 charter party between Plaintiff and Transgrain for the use of the M/V CAMEL. On April 2, 2007, Concordia paid the sum of $1,046,651 in satisfaction of that Invoice.

- On May 4, 2007, Plaintiff presented a Freight Invoice to Transgrain for the sum of $1,624,168.86 in connection with an April 21, 2007 charter party between Plaintiff and Transgrain for the use of the M/V CAMEL. On May 8, 2007, Concordia paid the sum of $1,624,017.82 in satisfaction of that Invoice.

- On May 17, 2007, Plaintiff presented a Freight Invoice to Transgrain for the sum of $44,734.11 in connection with the February 21, 2007 charter party for the use of M/V CAMEL. On May 29, 2007, Concordia remitted the sum of $44,734.11 in satisfaction of that Invoice.

- On May 10, 2007, Orama Shipping Corp. ("Orama"), as owner of the M/V ZEBRA, presented a Freight Invoice to Transgrain for the sum of $461,860.37 in connection with a May 10, 2007 charter party between Orama and Transgrain for the use of the M/V ZEBRA. On June 4, 2007, Concordia remitted the sum of $461,860.37 in satisfaction of that Invoice.

- On June 11, 2007, Orama presented a Final Freight Invoice to Transgrain for the sum of $10,740.30 in connection with the May 10, 2007 charter party between Orama and Transgrain for the use of the M/V ZEBRA. On June 12, 2007, Concordia paid the sum of $10,740.30 in satisfaction of that Invoice.

- On June 29, 2007, Plaintiff presented a Freight Invoice to Transgrain for the sum of $68,348.00 in connection with an April 17, 20007 charter party between Plaintiff and

November 13, 2007
Page 3

Transgrain for the use of the M/V CAMEL. On July 9, 2007, Concordia wire transferred the sum of $68,348.00 in satisfaction of that Invoice.

In light of the foregoing, we respectfully submit that to the extent assets are moving through this District to or from Concordia in regards to debts owed to or by Transgrain, Defendant possesses a property interest in those assets, which interest is subject to attachment under Rule B.

It is well established that debts are attachable property under Admiralty Rule B. Rule B provides in pertinent part that a maritime plaintiff may "attach the defendant's *tangible or intangible* personal property – up to the amount sued for – in the hands of garnishees named in the process." Rule B(1)(a) (emphasis added). In *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263, 276 (2d Cir. 2002), the Second Circuit, in determining the plain meaning of Rule B with regard to what property is attachable under the Rule, noted that "it is difficult to imagine words more broadly inclusive than 'tangible or intangible.' What manner of thing can be neither tangible nor intangible and yet still be 'property?'"

Courts both in the Second Circuit and nationwide, in interpreting the scope of attachable property under Rule B, have regularly found that if the defendant has any form of a recognizable interest in almost any type of property, it is attachable under the Rule. This includes any goods, chattels, credits, or effects of the defendant (*Det Bergenske Dampskibsselskab v. Sabre Shipping Corp.*, 341 F.2d 50 (2d Cir. 1965)), as well as intangible items, such as debts, even if they have not yet matured or have only partially matured (*Iran Express Lines v. Sumatrop, AG*, 563 F.2d 648 (4th Cir. 1977); *Cowles v. Kinzler*, 225 F. Supp. 63 (W.D.PA. 1963)).

Courts have also regularly found that due to the broad language of the Rule, restrictions such as title or ownership do not control the scope of the attachability of property. Instead, any manner of interest in property is sufficient to permit restraint under Rule B. *See, e.g., Florida Conference Ass'n of Seventh-Day Adventists v. Kyriakides*, 151 F. Supp.2d 1223 (C.D.CA. 2001) (approving the attachment of part of a promissory note, despite the fact that the debt was not due or payable at the time, because the promissory note evidenced a debt which was "tangible or intangible property" under Rule B); *Linea Naviera de Cabotaje C.A. v. Mar Caribe de Navegacion C.A.*, 169 F. Supp.2d 1341, 1359-60 (M.D.Fla. 2001) (sustaining the attachment of the bank accounts of two companies arguably related to the defendants, on the basis that there were reasonable grounds to believe that the bank accounts were controlled by the defendant); *Trans-Asiatic Oil Ltd., S.A. v. Apex Oil Co.*, 743 F.2d 956 (1st Cir. 1984) (affirming the maintenance of an attachment of a debt owed by a third party in Puerto Rico to the defendant); *Oil Transp. Co., S.A. v. Hilton Oil Transp.*, 1994 A.M.C. 2817 (S.D. Tex. 1994) (permitting attachment of arbitration award rendered in New York in favor of defendant).

Particularly illuminating here is *Essar Int'l Ltd. v. Martrade Gulf Logistics, FZCO*, No. 07-3439, 2007 U.S. Dist. LEXIS 61713 (S.D.N.Y. Aug. 23, 2007). There, Judge Pauley held that the assets of an affiliated corporation of the defendant were subject to attachment under Rule B, as those funds were being transferred for the benefit of the defendant. In *Essar*, plaintiff

November 13, 2007
Page 4

captured funds for which the defendant Martrade was neither the originator nor the beneficiary of the remittance. 2007 U.S. Dist. LEXIS 61713, *2. Admittedly, however, defendant Martrade had directed its affiliate to pay the debt owed by Martrade to a third party. 2007 U.S. Dist. LEXIS 61713, *5. In moving to vacate the attachment, Marlog argued, *inter alia*, that the attached assets were Marlog's property and that Martrade had no interest whatsoever in them. Judge Pauley rejected that argument and ruled that to the extent that the challenged funds were being remitted *for the benefit* of Martrade, the defendant had a proprietary interest that was sufficient to uphold the plaintiff's attachment. 2007 U.S. Dist. LEXIS 61713, *4-5.

The current Order of Attachment in this case directs the garnishees to restrain assets of the Defendant "as may be held, received or transferred in its name or *for its benefit*." (emphasis added). Consequently, as a practical matter, assets which are in the district for the benefit of Transgrain will not be seized to the extent Transgrain utilizes Concordia as paying agent to effect money transfers to avoid identification of funds being moved for Transgrain's benefit by shielding them under the name of the agent. We are thus requesting that the Court amend the Order of Attachment to direct the Clerk to issue a supplemental PMAG that extends to any assets that "may be held, received, or transferred for Defendant's benefit in the name of its paying or funding agent Concordia."

The Courts of this District have, in the past, granted applications requesting that assets of a paying or funding agent, such as Concordia here, be restrained. For the Court's guidance, a sampling of cases where paying agents are identified in orders of attachment in the manner being requested herein include but are not limited to the following:

- *Blue Crocus Marine Ship. Ltd. v. Joint Stock Company Belarussian Ship. Co.*, 07-8222 (JSR) (Exhibit D);
- *Whim Star Co. Ltd. v. China Metals Shipping Agency Co. Ltd.*, 07-8718 (WHP) (Exhibit E)
- *Novorossiysk Ship. Co. v. Sun Energy Trading Ltd.*, 07-8017 (PAC) (Exhibit F);
- *Aquidneck Shipping Corp. v. Ocean and Oil Ltd.*, 07-8152 (RMB) (Exhibit G); and
- *Pelican Navigation Ltd. v. Oceanchart Limited*, 06-13719 (LAP) (Exhibit H).

For the foregoing reasons, we respectfully request that the Court issue the attached Order directing the Clerk to issue a Supplemental PMAG identifying Concordia as an entity that transfers, holds and/or receives assets of the Defendant Transgrain so that Plaintiff can ensure that assets of the Defendant Transgrain are properly restrained.

We thank the Court for its attention to this matter. We remain available if the Court has any further questions.

Respectfully submitted,
FREEHILL HOGAN & MAHAR LLP

Manuel A. Molina

NYDOCS1/293626.1

FREEHILL, HOGAN & MAHAR LLP