# ATTACHMENT 1

John Gazis

From:     handy@carebeka.nl
Sent:     Τρίτη, 18 Σεπτεμβρίου 2007 13:49
To:      chartering@royalmaritime.gr
Subject:  Doc-No. 3931470


message.html (1
KB)

CAREBEKA TRANSPORT ROTTERDAM - TEL: (31) 10-4799 560 / FAX: 4795 991
EMAIL: HANDY@CAREBEKA.NL
INTERNET: WWW.STEDERGROUP.COM
WWW.CAREBEKA.NL


Doc-No. 3931470  18/SEP/2007  12:48 (UTC +0200) RB


thomas/robbert

just received from charterers:

--

without prejudice to our rights which we herewith reserve

camel
--
regret to advise that we are facing serious problems in stemming the first cargo from
the blsea - we herewith advise owners that we arenot able to perform this shipment

krgds

--


All our activities are subject to the Dutch Forwarding Conditions and the Rotterdam
Shipbroker Conditions, both filed with the registry of the Rotterdam District Court,
latest edition.

# ATTACHMENT 2

**The Royal Bank of Scotland plc**

Piraeus Branch
61 Akti Miaouli
185 10 Piraeus

Αίτηση Πληρωμής
**Request for Fund Transfer**

Ημερομηνία • Date .17/09/2007

Παρακαλούμε να εκτελέσετε το παρακάτω έμβασμα
Please effect the following remittance by

X  τηλεγραφική
   τρόπο

   ταχύδρομικό
   mail

| | ΣΥΜΠΛΗΡΩΝΕΤΑΙ ΑΠΟ ΤΟΝ ΕΝΤΟΛΕΑ TO BE COMPLETED BY THE REMITTER | | | ΤΑ ΣΚΙΑΣΜΕΝΑ ΜΕΡΗ ΕΙΝΑΙ ΜΟΝΟ ΓΙΑ ΧΡΗΣΗ ΤΗΣ ΤΡΑΠΕΖΑΣ ALL SHADED PARTS ARE FOR USE BY THE BANK ONLY | COVER (MT 202) |
|---|---|---|---|---|---|
| 32A | Ποσό Amount   USD 140.582 Ποσό ολογράφως Amount in words  ONE HUNDRED FORTY THOUSAND FIVE HUNDRED EIGHTY TWO U.S. DOLLARS | 32 | PAYEE ORDER BY | | 20 |
| | | 32A | VALUE CURRENCY AMOUNT | | 32A |
| | | 50 | ORDERER | | |
| | Παρακαλούμε επιβεβαιώστε το FAX έμβασμα στο δικαιούχο στο tele 0020663333927, 3330010 Please confirm transfer to the beneficiary at his/her fax     PORT SAID, EGYPT | 52 | ORDERING BANK | | 52 |
| | | | SENDER'S CORRESPONDENT | | 53A/50/52/53/54 |
| 57 | Τράπεζα δικαιούχου Beneficiary's Bank  COMMERCIAL INT'L BANK (CIB) PORT SAID BRANCH, EGYPT | 54 | RECEIVER'S CORRESPONDENT | 2912 | 55 |
| | | 56 | INTERMEDIARY BANK | | 56 |
| | | 57 | ACCOUNT WITH | | 57 |
| 59 | Αριθ. λογαριασμού 0250307782 Account number Δικαιούχος Beneficiary  EGYPTIAN MARITIME CONSULTANT OFFICE (EMCO) PORT SAID - EGYPT | 58 | BENEFICIARY BANK | | 58 |
| | | 59 | BENEFICIARY | | |
| 70 | Αφορά Details  M/V CAMEL PASSING SUEZ CANAL SOUTH TO NORTH, EMPTY  18/09/07 | 70 | DETAILS | | |
| 71A | Έξοδα CHARGES  [ ] Δικαιούχου Beneficiary  [ ] Μοιρασμένα Cash  [X] Εντολέα Orderer | 71A | CHARGES | | |
| 72 | Εδικές οδηγίες Bank to Bank info | 72 | BANK TO BANK INFO | | 72 |

[RECEIVED 17 SEP 2007 THE ROYAL BANK OF SCOTLAND PLC COPY]

Για το παραπάνω ποσό σας εξουσιοδοτούμε να χρεώσετε το λογαριασμό μας
For the above sum we authorise you to debit our account

Έξοδά σας
Your charges

167735-100

167735-100

Είμαι απόλυτα κατανοητό ότι το έμβασμα εκτελείται με την ευθύνη του αποστολέα και ότι η The Royal Bank of Scotland plc και / ή οι ανταποκριτές της δεν αναλαμβάνουν καμία απολύτως ευθύνη για τυχόν καθυστέρηση κατά τη μεταφορά ή την παράδοση εντολής του δικαιούχου. Είναι επίσης κατανοητό ότι η εφαρμοζόμενη ισοτιμία μετατροπής (σε περίπτωση ξένου νομίσματος) θα είναι η ισχύουσα στο κεντρικό μας κατάστημα τον λόγο κατά την ημέρα της επεξεργασίας του εμβάσματος εκτός εάν έχει προηγηθεί διαφορετική συμφωνία.

It is clearly understood that the payment is undertaken at the sender's risk and that The Royal Bank of Scotland plc and / or their agents accept no liability whatsoever for any delay in transit or from failure to identify the beneficiary. It is also understood that the applicable rate of exchange (in the case of foreign currency) will be that ruling on the date of processing in our Head Office unless otherwise previously agreed.

| Διεύθυνση πελάτη • Remitter's address  CLIO NAVIGATION CORP. 13, SACHTOURI STR., 18536 PIRAEUS GREECE | Signature verification | Authority of funds | Prepared by | Input by | Checked by | Authorised by |
|---|---|---|---|---|---|---|
| | | | | | | |

[NAVIGATION CORP seal]

Υπογραφή & σφραγίδα • Signature & seal    Τηλέφωνο • Phone 210-4532900

# ATTACHMENT 3

John Gazis

| From: | ROYAL MARITIME INC. [chartering@royalmaritime.gr] |
|---|---|
| Sent: | Τρίτη, 18 Σεπτεμβρίου 2007 17:25 |
| To: | handy@carebeka.nl |
| Cc: | rtbroek@hotmail.com |
| Subject: | MV CAMEL CP DD 29-08-07 |

ROYAL MARITIME INC.
18 AGAMEMNONOS STR.-185 33 ,KASTELLA-PIRAEUS-GREECE TEL:+30 210 4110177 (PBX) - FAX: +
30 210 4110113
E-MAIL: CHARTERING@ROYALMARITIME.GR
==================================================================
MR ROBBERT/THOMAS

GD EVEN

FLG RECEIVED FROM OWNERS ON WHICH PLS ADVISE US URGENTLY..

QUOTE
Without Prejudice

M.V. CAMEL- URGENT

Dear Sirs,

We refer to your last e-mail of today regarding the above captioned matter and we
should be grateful if you would clarify in writing whether you intend to cancel the
charterparty dated  29/8/07.

We  look forward to hearing from you ASAP.

Kind regards
UNQUOTE


RGRDS
ROYAL MARITIME INC. //TG

FOR YR ORDERS    :    CHARTERING@ROYALMARITIME.GR
FR VSLS POSITION:    POSITION@ROYALMARITIME.GR
FR POST FIXING/OPERATION : OPERATION@ROYALMARITIME.GR

-------------------
PERSONAL EMAIL: THOMASG@ROYALMARITIME.GR OFFICE PHONE: +302104110177 MOBILE PH NR: +
306974737676
SKYPE: thomas-clio
MSN  : thomasvg@rocketmail.com <mailto:thomasvg@rocketmail.com>

1

John Gazis

From:     ROYAL MARITIME INC. [chartering@royalmaritime.gr]
Sent:     Τετάρτη, 19 Σεπτεμβρίου 2007 14:13
To:       handy@carebeka.nl
Cc:       rtbroek@hotmail.com
Subject:  MV CAMEL CP DD 29-08-07

# URGENT

## ROYAL MARITIME INC.
18 AGAMEMNONOS STR.-185 33 ,KASTELLA-PIRAEUS-GREECE
TEL:+30 210 4110177 (PBX) - FAX: +30 210 4110113
E-MAIL: CHARTERING@ROYALMARITIME.GR
========================================================
MR ROBBERT/THOMAS

GD AFTN

FLG RECEIVED NOW FROM OWNERS

QUOTE
DEAR SIRS
RE MV CAMEL CP DD 29-08-07

PLEASE URGENTLY CONFIRM   IN   OWNERS  REQUEST OF YESTERDAY
WHETHER VESSEL IS CONSIDERED FREE TO LOOK FOR OTHER BUSINESS OR NOT.

YOUR PROMPT ATTENTION ON ABOVE IS GREATLY REQUESTED IN ORDER OWNERS
MITIGATE THEIR LOSSES IN CASE VESSEL IS FINALLY CONSIDERED FREE FROM THE
CHARTERERS.

THANKS

BEST REGARDS
UNQUOTE

RGRDS
ROYAL MARITIME INC. /ITG

FOR YR ORDERS  :  CHARTERING@ROYALMARITIME.GR
FR VSLS POSITION:   POSITION@ROYALMARITIME.GR
FR POST FIXING/OPERATION : OPERATION@ROYALMARITIME.GR

PERSONAL EMAIL: THOMASG@ROYALMARITIME.GR
OFFICE PHONE: +302104110177
MOBILE PH NR: +306974737676
SKYPE: thomas-clio
MSN : thomasvg@rocketmail.com

CLIO

From:      ROYAL MARITIME INC. [chartering@royalmaritime.gr]
Sent:      Τετάρτη, 19 Σεπτεμβρίου 2007 7:36 πμ
To:        handy@carebeka.nl
Cc:        rtbroek@hotmail.com
Subject:   MV CAMEL CP DD 29-08-07

## ROYAL MARITIME INC.
18 AGAMEMNONOS STR.-185 33 ,KASTELLA-PIRAEUS-GREECE
TEL:+30 210 4110177 (PBX) - FAX: +30 210 4110113
E-MAIL: CHARTERING@ROYALMARITIME.GR
==========================================================
MR ROBBERT/THOMAS

GD EVEN

FLG RECEIVED FM OWNERS:

QUOTE

Without Prejudice

M.V. CAMEL- URGENT

Dear Sirs,

Further to our last correspondence of yesterday and today, it is clear that you do not intend/ are not able to
proceed with this charterparty agreement. As such we consider that you are in repudiatory breach of contract
and we will be guided accordingly with reservation of all of our rights against you in that respect, including our
right to claim amounts already due to us and damages.

Kind regards

UNQUOTE

RGRDS
ROYAL MARITIME INC. //TG

FOR YR ORDERS   :   CHARTERING@ROYALMARITIME.GR
FR VSLS POSITION:   POSITION@ROYALMARITIME.GR
FR POST FIXING/OPERATION : OPERATION@ROYALMARITIME.GR

------------------
PERSONAL EMAIL: THOMASG@ROYALMARITIME.GR
OFFICE PHONE: +302104110177
MOBILE PH NR: +306974737676
SKYPE: thomas-clio
MSN  : thomasvg@rocketmail.com

# ATTACHMENT 4

Secr.

| | |
|---|---|
| From: | ROYAL MARITIME INC. [chartering@royalmaritime.gr] |
| Sent: | Πέμπτη, 20 Σεπτεμβρίου 2007 20:56 |
| To: | CLIONET@ATH.FORTHNET.GR |
| Subject: | MV CAMEL CLEAN RECAP 20/SEPT/07 |

ROYAL MARITIME INC.
18 AGAMEMNONOS STR.-185 33 ,KASTELLA-PIRAEUS-GREECE TEL:+30 210 4110177 (PBX) - FAX: +
30 210 4110113
E-MAIL: CHARTERING@ROYALMARITIME.GR
═══════════════════════════════════════════════════════════
CAPTAIN VASSILIOS/THOMAS

GD EVEN

PLS FIND HEREUNDER CLEAN FIXTURE RECAP FOR MV CAMEL DD 20/SEPT/08 AS FLG:

CLEAN FIXTURE RECAP OF MESSR DELTA MARITIME / MV CAMEL WHEAT NOVO / 1 SP EGYPT MED
DATED 20TH SEPTEMBER 2007

++++
MV CAMEL
TYPE: selftrimming bulk carrier, singledeck IMO NUMBER: 7526675
CLASS: bureau veritas
FLAG: Panama
BUILT: 1978
DWAT: 44.750 MT
DWCC: ABT 44.000 MT STW=DWT
MAX DRAFT SSW: 12.249
LOA / BM: 182.82 M / 30.12M
LBP / DM: 176,57 M / 16,85 M
GT / NT: 26.194 / 14.930
GRAIN: 1,910,633 CUBIC FEET/
NOS OF HOLDS/HATCHES: 6 / 6
CARGO GEAR: VSL TO BE CONSIDERED AS GEARLESS LOCATION OF ENG/BR: all aft
FITTED: grain
TPC: 49 T IN LOAD CONDITION
DIST WLTOHC IN BLST: ABT FRD 14.0 M AND ABT AFT 12,5 M TYPE OF HATCHCOVERS:
MACGREGOR STEEL HATCH COVERS FOLDING TYPE HATCH DIMENSIONS: NO 1 = 11.9 X
13.9 M NOT WORKABLE AS LESS 14 M REQUESTED) NO 2 - 6 = 15.1 X 16.5 M HOLD DIMS NO 1 =
19.15 X 29.4 X 17.0 M NO 2 - 5 = 20.55 X 29.4 X 17.0 M NO 6 =
16.95 X 29.4 X 17.0 M

GRAIN/BALE CUBIC BREAKDOWN EACH HOLD

HOLDS M3 /GRAIN
HOLD NO 1 8213 M3
HOLD NO 2 9147 M3
HOLD NO 3 9507 M3
HOLD NO 4 9466 M3
HOLD NO 5 9176 M3
HOLD NO 6 8594 M3
TOTAL 54.103 M3
ALL ABV ABT

[OWNERS: CLIO MARITIME ]
[DISPONENT OWNERS: ................]

- ITINERARY: OPEN PIREAUS 23 SEPT, ETA NOVO 26/28TH SEPT. SEPT.
- LAST 3 CARGOES: R.PHOSPHATE/ UREA / CLINKER
- OWNRS CONFIRM THAT VSL IS GRAIN CLEAN AND HAS ON BOARD VALID DOCUMENT OF
AUTHORIZATION FOR CARRIAGE OF GRAINS IN BULK
- VESSEL'S HOLDS TO BE CLEAN AND DRY CLEAR OF ALL LOOSE SCALE RUST/PAINT FLAKES/
VERMINS/ OIL STAINS / PREVIOUS CARGO RESIDUES AND ALSO NOT TO BE FRESHLY PAINTED PRIOR
LOADING OF THE DESIGNATED GRAIN CARGO(ES).
- NAME/REGISTRATION/OWNERSHIP/CLASS/ISM CERTIFICATION/PANDI CLUB/H+M INSURANCE NOT TO
BE CHANGED OR TRANSFERRED THROUGHOUT WHOLE TRIP DURATION.

1

- VESSEL NOT TO BE SCHEDULED FOR BREAK-UP OR SOLD FOR SCRAP DURING WHOLE TRIP DURATION
OR IMMEDIATELY AFTER REDELIVERY AND THIS TRIP NOT TO BE THE LAST TRIP BEFORE ANY SUCH
SCHEDULING OF VESSEL FOR BREAK-UP OR SCRAP.
- THE HOLD HAVE NATUREL VENTILATION/HOLD ACCESS MUST BE WATER PROOF/WEATHER PROOF AND
TESTED FOR LEAKAGE.
- OWNERS TO RPOVIDE CHTRS WITH CERTIFICATE ISSUED BY VESSEL OWNERS/THEIR AGENTS/MASTER
OF THE CARRYING VESSEL, STATING THAT THE VESSEL IS FULLY CLASSIFIED LLOYD'S 100 A1 OR
EQUIVALENT AND IS COVERED BY A FIRST CLASS P&I CLUB AND HAVE A VALID I.S.M. CODE AS
REQUIRED UNDER THE SOLAS CONVENTION
1974 .

OWNERS TO PROVIDED CHTRS WITH

- CERTIFICATE ISSUED BY VESSEL OWNERS/THEIR AGENTS/MASTER OF
- THE CARRYING VESSEL, STATING THAT THE VESSEL IS FULLY CLASSIFIED
- LLOYD'S 100 A1 OR EQUIVALENT AND IS COVERED BY A FIRST CLASS P&I CLUB
- AND HAVE A VALID I.S.M. CODE AS REQUIRED UNDER THE SOLAS

- FUMIGATION
Cargo to be fumigated with aluminum phosphide by the grain supplier(s) at completion
of loading at supplier's expense, and time so used, if any will count as laytime.
All vessels should be ventilated after fumigation forty-eight (48) hours before
arrival at discharge port(s) in order to avoid the concentration of chemical smell,
which may affect the wheat.

- CERTIFICATE ISSUED BY THE VESSEL OWNERS/THEIR AGENTS/MASTER OF THE VESSEL,
CONFIRMING THAT THE VESSEL COMPLIES WITH THE REQUIREMENTS OF THE INTERNATIONAL CODE
FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES (ISPS
CODE) AND CARRIES WITHIN HER DOCUMENTS THE INTERNATIONAL SHIP SECURITY CERTIFICATE
(ISSC).
- CERTIFICATE FROM THE VESSEL OWNERS/THEIR AGENTS/MASTER, STATING THAT THE VESSEL HAS
NOT CARRIED ANY HAZARDOUS CARGO/CHEMICALS/FERTILIZERS DURING HER LAST VOYAGE,

VESSEL HAS GIVEN AS GEARLESS

============ FOR: ============
- A/C DELTA MARITIME AGENCY INC., GREECE
3 Alkyonis Str.
POB 77371
Palio Faliro
Athens, 17510 Greece
Regd. No. 3122.1/3910/24266 dd 09.09.2005

- CARGO: WHEAT IN BULK M/M 31500 MTS STOWAGE FACTOR 45 CBFT/MT WOG.
-  LAY/CAN: 25.09.2007 00:01LT / 28.09.2007 12:00LT
- LOADING PORT : 1-2SB AAAA NOVOROSSIYSK Shifting to 2nd berth if any to be for chrts
acct .
- LOADING TERMS : 6000 MT PWWD SHINC
NOR TO BE TENDERED W/W/W/W ATDN SHINC,but not prior to first layday.
Time used before commencement of laytime is not to count.
CHTRS ENTITLED FOR 3 HOURS NOT TO COUNT AS LAYTIME IF USED FOR PREPARATION OF CARGO
DOCUMENTS AND NOT COMBINED WITH LOADING.
- DISCHARGING PORTS : 1SP 1-2GSB EGYPT MEDITERRANEAN INTN EL DEKHEILA
- DISCHARGING TERMS :
EGYPT: 5000 MT PWWD THU1700-SAT0800 NTC EIU NOR TO BE TENDERED W/W/W/W WITHIN OFFICE
HRS:
SAT0800-WED1700, THU0800-THU1200,

LAY TIME TO COMMENCE SAME DAY AT 1400 HRS IF NOR TENTERED BEFORE NOON AND 08:00 HRS
NEXT WORKIND DAY IF NOR TENDERED AFTER NOON

HOLIDAYS AS PER BIMCO 2007 HOLIDAY CALENDER.
NATIONAL HOLIDAYS NOT TO COUNT AS LAYTIME.
LAY TIME TO COMMENCE SAME DAY AT 1400 HRS IF NOR TENTERED BEFORE NOON AND 08:00 HRS
NEXT WORKIND DAY IF NOR TENDERED AFTER NOON

IN CASE OF ANY FURTHER SHIFTING TO BE FR CHRTRS ACCNT AND TIME TO COUNT.

- lay/time non-reversible BE
- FREIGHT RATES: USD 36,75 PMT FIOT Bs/L QNTY BSS 1/1 FOR 1 EGYPTMED PORT;
- Freight to be paid by the Charterers 100% less commissions only within 2 banking

2

days after signing and releasing of Bills
    of Lading marked "Freight payable as per Charter Party dated (our c/p date...)",
will not commence discharge and all time lost till Owners receiving the freight to
count as laytime and any expenses resulted therefrom to be for Charterers' account,
and upon presentation of Owners'
Invoice by fax via the Brokers less commissions only.
Freight is payable by irrevocable bank transfer in U.S.A. currency to Owners' account.
Full freight deemed earned on shipment of cargo discountless and non-returnable ship
and/or cargo lost or not lost.
- DEMURRAGE: USD 23.000 PDPR/DHD WTS BE
- any taxes/dues on cgo/freight to be for Charterers' account
- any taxes/dues on vsl/flag/crew to be for Owners' account
- any exins on cargo due to vessel's age/class/flag/ownership to be for Charterers'
Account.

- Bs/L to be marked "Clean on board".
Bs/L to be marked "Freight Payable as per Charter-Party (our c/p date)" or "Freight
Prepaid" in CHOPT.
If marked "Freight Prepaid", Bs/L to be kept under the Owners' Agents'
custody and to be released immediately upon Owners' receipt of freight payment.
In case of original Bs/L are not available upon arrival, the Owners guarantee to
discharge cargo without presentation of the original Bs/L against Letter of Indemnity
in Owners' P&I club wording, signed/stamped by Charterers only.

- Agents at loadport:

DELTA-C LLC.
Novorossiysk, 353900 Russia
phone: +7 8617 678733
fax : +7 8617 678755
e-mail: <mailto:delta@ma-delta.com> delta@ma-delta.com <mailto:delta@ma-
delta.comtelex> telex : (51) 94075814 delt g.
MIC: Alexander Shutkin
phone: +7 8617 678744

- Agents at dischport to be nominated by chtrs LATEST UPON LOADING COMPLETION.
- Paramount Clause General is incorporated (BIMCO wording)
- BIMCO ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES 2005 to apply.
- Commissions on freight/deadfreight/demurrage:
2,5 PCT ADDCOM + 1,25 PCT BROKERAGE COMM FOR SMYRNA SHIPPING CO
- OTHERWISE CHTRS SYNA'2000 WORKED C/P
"CAPITAL SKY" DD 21.08.07 WITH LOGICAL AMENDMENTS
- ALL NEGOS/EVENTUAL FIXTURE DETAILS TO REMAIN STRICTLY PRIVATE AND CONFIDENTIAL
BETWEEN PARTIES INVOLVED.
E&OE

CHRTS AND OWNER AGREED ON REVISED BELOW TERMS ON C/P OF SYNA'2000 WORKED C/P "CAPITAL
SKY" DD 21.08.07 WITH LOGICAL AMENDMENTS ;

MAIN BODY
1ST PAGE - AS PER MAIN TERMS AGREED.

PART II

LINE 13 -DELETE "ANCHORAGES" - APPROVED BY CHRT LINE 19 - DELETE "VESSEL'S"
REPLACE WITH "CHARTERERS"- APPROVED BY CHRT LINE 42 - DELETE "ANCHORAGES" - APPROVED
BY CHRT LINE 46 - AT THE END ADD " IN CASE OF ANY FURTHER SHIFTING TO BE FR CHRTRS
ACCNT AND TIME TO COUNT." - APPROVED BY CHRT LINE 75 - DELETE "08.00 HOURS" INSERT
"00.01 HRS OF 26/09/07" - APPROVED BY CHRT LINE
79 - DELETE "09.00 HOURS" INSERT "12.00 HRS OF 28/09/07" - APPROVED BY CHRT LINE 84 -
DELETE "10" - APPROVED BY CHRT

19. RELET  - PLS DELETE ALL (LINES 231 - 233) - APPROVED BY CHRT

LINES 265-271 - PLS DELETE - ALL APPROVED BY CHRT

ADDITIONAL CLAUSES

CLAUSE 29 - DELETE ALL AND INSERT MV CAMEL DESCRIPTION AS PER MAIN TERMS AGREED -
APPROVED BY CHRT

3

CLAUSE 30- DELETE ALL AND INSERT AS PER MAIN TERMS AGREED - APPROVED BY CHRT

CLAUSE 32 - 3RD PARAGRAPH LAST 2 LINES TO READ AS:
"LAY TIME TO COMMENCE SAME DAY AT 1400 HRS IF NOR TENTERED BEFORE NOON AND
  08:00 HRS NEXT WORKIND DAY IF NOR TENDERED AFTER NOON " -  APPROVED BY CHRT

CLAUSE 33.
2ND PARAGRAPH TO AMMEND AS PER MAIN TERMS AGREED "LAY TIME TO COMMENCE SAME DAY AT
1400 HRS IF NOR TENTERED BEFORE NOON AND
  08:00 HRS NEXT WORKIND DAY IF NOR TENDERED AFTER NOON " - APPROVED BY CHRT

3RD PARAGRAPH DELETE IN FULL AND REPLACE WITH:
AT LOAD PORT: ANY VSL'S SHIFTING TO BE FR CHRTRS ACCNT AND TIME - APPROVED BY CHRT

AT DISCHARGING PORT: SHIFTING TIME AND EXPENSES IN CASE OF 1ST SHIFTING, IF ANY, TO BE
FR OWNERS ACCNT AND TIME TO COUNT.  IN CASE OF ANY FURTHER SHIFTING TO BE FR CHRTRS
ACCNT AND TIME TO COUNT. - APPROVED BY CHRT

CLAUSE 34
2ND LINE TO READ AS "STATEMENT(S) OF FACT /NOTICE(S) OF READINESS DULY SIGNED BY
MASTER/AGENTS ONLY"
DELETE ALL OTHER. - APPROVED BY CHRT

ALL OTHER AS PER MAIN TERMS AGREED.

END.

RGRDS
ROYAL MARITIME INC. //TG

FOR YR ORDERS    :    CHARTERING@ROYALMARITIME.GR
FR VSLS POSITION:    POSITION@ROYALMARITIME.GR
FR POST FIXING/OPERATION : OPERATION@ROYALMARITIME.GR ~~~~~~~~~~~~~~~~~ PERSONAL EMAIL:
THOMASG@ROYALMARITIME.GR OFFICE PHONE: +302104110177 MOBILE PH NR: +306974737676
SKYPE: thomas-clio
MSN  : thomasvg@rocketmail.com

4

CONTINENT GRAIN CHARTER PARTY
Code name: "SYNACOMEX 2000"
Adopted PARIS 1957 by SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES
amended 1960,1974,1990 and 2000 in agreement with COMITE CENTRAL DES ARMATEURS DE FRANCE
In cooperation with Chambre Arbitrale Maritime de Paris and the French Chartering and S. & P. Brokers' Association

PART I

| | |
|---|---|
| 1. Shipbroker(s)<br><br>SMYRNA SHIPPING CO. LTD. | 2. Place and date of Charter Party<br><br>Izmir, 20.09.2007 |
| 3. Owners and place of business (state full style and address)   (Cl. 1)<br><br>Messr GRANVILLE NAVIGATION S.A. | 4. Charterers and place of business (state full style and address) (Cl. 1)<br>DELTA MARITIME AGENCY<br>3 Alkyonis Str.<br>POB 77371<br>Palio Faliro<br>Athens, 17510 Greece<br>Regd. No. 3122.1/3910/24266 dd 09.09.2005 |
| 5. Vessel's name (Cl. 1) CAMEL<br><br>flag /built/class:      Panama / 1978 / Bureau Veritas<br><br>NT/GT: 14930/ 26194<br><br>summer DWT: 44750<br>See Cl. 29 for vessel's description | 6. First layday date (Cl. 6)   25.09.2007 00:01LT<br><br>Cancelling date (Cl. 6)     28.09.2007 12:00LT<br><br>7. Present position / expected ready to load (Cl. 1)<br>Open Piraeus 23rd Sept, ETA Novo 26/28th September. |
| 8. Loading port(s) (O2)<br>1GSP 1-2GSB Novorossiysk AAAA<br>a) Always afloat (*)   b) ¹safely aground⁰ (²) | 9. Advance notices (Cl. 7)<br>- at load port to:<br>On-fixing and then 5, 3, 2 approximate and 1-day definite<br>to the Charterers and the Agents at loading port |
| 10. Discharging port(s) (Cl. 3)<br>1GSP 1-2GSB Egypt Mediterranean (Int-n El Dekheila) AAAA<br>a) Always afloat (*)   b) ²safely-aground⁰ (²) | -at discharging port: number of days / to: daily after sailing from loading port<br>to the Charterers and the Agents at discharging port |
| 11. Cargo nature and quantities (Cl. 2)<br>Wheat in bulk min/max 31500 mt, stowage factor 45 cbft/mt wog<br>a) No bags (*)   b) Maximum-in-bags-for-stowage (*) | 12. Freight rate (Cl. 4)<br><br>USD 36.75 per mt fiot for Bs/L quantity bss 1/1 for 1 Egypt Med port |
| 13. Freight rate payment (state currency and method of payment, beneficiary and bank account) (Cl. 4)<br><br>See Cl. 30 | 14. Loading rate (O. 5) (See Cl.33)<br><br>6000 mt per weather working day of 24 consecutive hours satshinc |
| | 15. Discharging rate (Cl. 5) (See Cl.33)<br><br>5000 mt per weather working day of 24 consecutive hours<br>Thu1700-Sat0800 ntc eiu |
| | 16. Demurrage / Despatch money (Cl. 9)<br>USD 23.000 per day pro-rata/Despatch Half Demurrage for working time<br>saved at both ends - See Cl. 34 |
| 17. Agents at loading port(s) (Cl. 13)  Delta C LLC, Novorossiysk,<br>See Cl. 39 | 18. Agents at discharging port(s) (Cl. 13)  to be nominated by chtrs LATEST<br>UPON LOADING COMPLETION  as per official tariff – See Cl. 39 |
| 19. Extra insurance, maximum (Cl. 14)<br><br>Any extra insurance on cargo due to vessel's age / class / flag /<br>Ownership to be for Charterers' Account | 20. Brokerage commission and to whom payable (Cl. 15)<br>1.25 per cent on Freight / Deadfreight / Demurrage<br>in favor of Smyrna Shipping Co. Ltd<br>Izmir / Turkey<br>Tel : 00902324573828<br>E mail : operations@smyrnashipping.com |
| 21. Address Commission (Cl. 16)<br><br>1.25 per cent | 1.25 per cent on F/D/D to Transbosphor Maritime Transport Industry & Trade Ltd.<br><br>a) Deductible (*)   b) Non-deductible (*) |

22. Numbers of the additional clauses covering special provisions, if any agreed

Rider Clauses from N° 29 to N° 43,  both inclusive, are to be incorporated in this Charter Party.
In case of any discrepancies between Rider Clauses and the rest of this Charter Party, Rider Clauses terms should prevail.
It is mutually agreed that this Charter Party shall be performed subject to the conditions contained herein consisting of PART I and PART II including additional clauses if any agreed and stated in Box 22. In the event of a conflict of conditions, the provisions of PART I shall prevail over those of PART II to the extent of such conflict but no further.

| For the Owners | For the Charterers<br><br>DELTA MARITIME AGENCY INC.<br>ΥΠΗΡΕΣΙΕΣ ΝΑΥΛΟΜΕΣΙΤΩΝ<br>ΕΤΑΙΡΙΑ Α.Ν. 89-67<br>ΑΛΚΥΟΝΗΣ 3 - Π. ΦΑΛΗΡΟ ΤΚ 175 61 |

(*) Delete as appropriate; if no deletion alternative a) to apply.

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

## PART II

## "SYNACOMEX2000" Continent Grain Charterparty

**1. Owners, Charterers**

It is this day agreed between the party designated in Box 3. 1
Owners of the Vessel named and described in Box 5, being 2
now in position and expected ready to load as mentioned in 3
Box 7, and the party designated in Box 4 as Charterers, THAT 4
5

**2. Loading Port(s) and Cargo** 6

The said Vessel being tight, staunch and in every way fit for 7
the voyage, shall with all convenient speed proceed to the 8
place designated in Box 8, which in case of named port(s) 9
Owners acknowledge as safe and suitable for this Vessel 10
and there load always afloat, unless "safely aground" has 11
been specifically agreed in Box 8, in such safe berth, dock, 12
wharf or anchorage as Charterers or their Agents or 13
Shippers may direct a full and complete cargo of wheat 14
and/or maize and/or rye and/or barley as described in Box 15
11. In metric tons (5 % more or less in Owners' option) in bulk. 16
Shippers have the option of using a second safe berth. The 17
time for shifting between the two berths shall count as 18
laytime, but shifting expenses shall be for Vessel's Charterers account. 19
Owners shall provide and install at their risk and expense 20
and on their time all that is required for safe stowage of 21
grain according to local and international regulations. 22
The cargo shall not exceed what the Vessel can reasonably 23
stow and carry over and above her bunkers, apparel, stores, 24
provisions and accommodation. The whole cargo shall be 25
carried and stowed under deck in unobstructed main holds. 26
All cargo on board to be delivered. 27
Furthermore, if stowage bags have been specifically agreed, 28
the following shall apply: 29
Charterers shall supply for stowage purposes a quantity of 30
bagged cargo not exceeding the quantity specified in Box 31
11, which shall be stowed at their risk and expense. The 32
number of bags signed for on Bills of Lading to be binding 33
on Vessel and Owners, unless error or fraud be proved. 34

**3. Discharging Port(s)** 35

Being so loaded, the Vessel shall proceed with all convenient 36
speed direct to the place designated in Box 10, which in 37
case of named port(s) Owners acknowledge as safe and 38
suitable for this Vessel, and there discharge the cargo 39
always afloat, unless "safely aground" has been specifically 40
agreed in Box 10. In such safe berth, dock, wharf or 41
anchorage as Charterers or their Agents or Receivers may 42
direct. Receivers have the option of using a second safe 43
berth. The time for shifting between the two berths shall 44
count as laytime, but shifting expenses shall be for Vessel's 45
account. In case of any further shifting to be for Charterer's 46
and time to count. 47

**4. Freight** 47

The freight agreed under this Charter Party shall be as 48
stated in Box 12, per metric ton on nett Bill of Lading weight 49
and shall be deemed earned as cargo is loaded on board, 50
prepaid discountless and non-returnable, Vessel and/or 51
cargo lost or not lost. 52
The freight shall be paid as specified in Box 13. 53
All charges and dues levied on the cargo, freight shall be for 54
Charterers' account and those levied on the Vessel, flag, crew 55
howsoever assessed shall be for Owners' account. (See Cl. 30, 31) 56

**5. Loading and Discharging** 57

Cargo shall be loaded, spout-trimmed and/or stowed at the 58
risk and expense of Shippers/Charterers at the average 59
rate stated in Box 14, weather permitting. 60
Cargo shall be discharged at the risk and expense of 61
Receivers/Charterers at the average rate stated in Box 15, 62
weather permitting. 63
Stowage shall be under Master's direction and res- 64
ponsibility. Shippers' and/or Charterers' representatives 65
have the right to be on board the Vessel during loading, 66
discharging or lightering for the purpose of inspecting the 67
cargo and/or weighing. Charterers and Owners are allowed 68

to work overtime, such expenses shall be for account of 69
the party ordering same. If ordered by Port Authorities, 70
overtime shall be for Charterers' account. Overtime services 71
rendered by ship's crew shall be in all cases for Owners' 72
account. 73

**6. Laydays, Cancelling** 74

At port of loading laytime shall not count before 08.00 01.00 hours 75
on the layday date stated in Box 6 and in any case not before 76
the date notified by the 10 days notice as per Clause 7. Should 77
the Vessel's notice of readiness not be validly tendered as per 78
Clause 8 before 09.00 12.00 hours on the cancelling date stated 79
in Box 6, Charterers shall have the option of cancelling 80
this charter at any time thereafter, but not later than one hour 81
after the notice is validly tendered. 82

**7. Vessel's Positions, Notices** 83

Master and/or Owners shall give 10 days and thereafter 5 84
days notice of Vessel's expected readiness to load to the 85
party designated in Box 9. 86
Master and/or Owners shall give notice of Vessel's 87
Expected Time of Arrival (ETA) at discharging port as 88
specified in Box 9. 89
Master and/or Owners shall give the relevant parties prompt 90
advice of any substantial change in Vessel's ETA at loading 91
and at discharging ports. 92

**8. Laytime** 93

Vessel's written notice of readiness to load and/or discharge shall be 94
tendered by hand or by any means of telecommunication at the 95
offices of Shippers/Charterers/ Receivers or their Agents between 96
08.00 and 17.00 hours 97
on all days except Saturdays, Sundays and Holidays and between 98
08.00 hours and 12.00 hours on Saturdays unless 99
a Holiday See Cl.32. Such notice of readiness shall be delivered when 100
Vessel is in the loading or discharging berth and in all 101
respects ready to load/discharge. At loading port Shippers/ 102
Charterers or their Agents have the privilege to inspect Vessel's holds 103
and reject the notice when holds are not 104
clean, dry, odourless and in all respects ready to receive 105
the cargo. 106
In case of dispute, an independent surveyor shall decide about 107
Vessel's readiness to load, the party in the wrong bearing the 108
costs. If the rejection of notice of readiness is undisputed or 109
confirmed by surveyor the laytime will only start to count after 110
the Vessel has validly tendered again when ready. 111
Only when the loading and/or discharging berth is unavailable, 112
Master may warrant that the Vessel is in all respects ready and may 113
tender notice of readiness to load and/or discharge from any usual 114
waiting place, whether in port or not, whether in free pratique or not, 115
whether customs cleared or not (See Cl.32). 116
Laytime shall commence at 14.00 hours if notice of 117
readiness to load and/or discharge is validly tendered at or before 118
12.00 hours and at 08.00 hours on the next working day if notice of 119
readiness is validly tendered after 12.00 120
hours. Time used before commencement of laytime shall 121
not count. Laytime shall not count between 12.00 hours on Saturdays 122
or 17.00 hours on days preceding a Holiday and 08.00 hours on the 123
following working day, unless used in which case half time actually 124
used shall count (See Cl.33). 125
Any delays caused by ice, floods, quarantine, or by cases of "force 126
majeure" shall not count as laytime unless the 127
Vessel is already on demurrage. 128
When Master has tendered notice of readiness to load or discharge 129
from a waiting place and Vessel is subsequently found unready in 130
application of the above provisions, laytime or time on demurrage 131
shall not count from the time the Vessel is rejected until the time she 132
is accepted. Additionally, any actual time lost on account of Vessel's 133
obtaining free pratique or customs clearance shall not count as laytime 134
or time on 135
136
137

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. NMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

## PART II

## "SYNACOMEX2000" Continent Grain Charterparty

demurrage. 138
~~At second subsequent port(s) of loading or discharging,~~ 139
~~laytime or time on demurrage shall resume counting from~~ 140
~~Vessel's arrival at loading or discharging berth, if available,~~ 141
~~or from Vessel's arrival at a usual waiting place, if berth is~~ 142
~~unavailable.~~ 143
At all ports any time lost shifting from waiting place to berth 144
shall not count as laytime or as time on demurrage. 145

**9. Demurrage, Despatch Money** 146
Demurrage is payable by Charterers at the rate stated in 147
Box 16 per day of 24 consecutive hours or pro rata. 148
Owners shall pay to Charterers despatch money for laytime 149
saved in loading/discharging at the rate stated in Box 16 150
per day of 24 consecutive hours or pro rata. See Cl. 34 151

**10. Seaworthy Trim** 152
If ordered to be loaded or discharged at more than one 153
berth and/or port, the Vessel is to be left in seaworthy trim 154
to Master's reasonable satisfaction for the passage between 155
berths and/or ports at Shippers'/Charterers'/Receivers' 156
expense, and time used for placing Vessel in seaworthy 157
trim shall count as laytime or time on demurrage. 158

**11. Fumigation (See Cl.38)** 159
Charterers have the liberty to fumigate the cargo on board 160
at loading and discharging port(s) or places en route at 161
their risk and expense. Charterers are responsible for 162
ensuring that Officers and Crew as well as all other persons 163
on board the Vessel during and after the fumigation are not 164
exposed to any health hazards whatsoever. Charterers 165
undertake to pay Owners all necessary expenses incurred 166
because of the fumigation and time lost thereby shall count 167
as laytime or time on demurrage. When fumigation has 168
been effected at loading port and has been certified by 169
proper survey or by a competent authority, Bills of Lading 170
shall not be claused by Master for reason of insects having 171
been detected in the cargo prior to such fumigation. 172

**12. Lights and Gear** 173
Whenever required, Vessel shall supply free use of lights as 174
on board but sufficient to carry on night work. 175
Provided described as geared, Vessel, whenever required, 176
shall supply free use of all cargo handling gear on board, in 177
good working order, with the necessary power, and of 178
runners, ropes and slings as on board. Shore hands shall 179
be used to drive the gear, at Shippers'/Charterers'/ 180
Receivers' account. Any time actually lost on account of 181
breakdown of Vessel's gear shall not count as laytime or 182
time on demurrage and any stevedore standby time charges 183
incurred thereby shall be for Owners' account. 184

**13. Agencies** 185
At loading port, Vessel shall be consigned to the Agents 186
designated in Box 17. 187
At discharging port, Vessel shall be consigned to the Agents 188
designated in Box 18. 189

**14. Extra Insurance - See Box 16** 190
~~Extra insurance on cargo due to Vessel's age and/or flag~~ 191
~~and/or class shall be for Owners' account but limited to the~~ 192
~~amount specified in Box 16, such extra insurance shall be~~ 193
~~covered by Charterers for Owners' account and shall be~~ 194
~~deducted from settlement of freight.~~ 195

**15. Brokerage** 196
A brokerage commission as stated in Box 20 on the gross 197
amount of freight, deadfreight and demurrage earned, is 198
due to the party(ies) designated in Box 20 and is deductible 199
from same unless "non-deductible" has been specifically 200

agreed. 201

**16. Address Commission** 202
An address commission as stated in Box 21 on the gross 203
amount of freight, deadfreight and demurrage earned is 204
due to Charterers and is deductible from freight, deadfreight 205
and demurrage. 206

**17. ISM Clause** 207
From the date of coming into force of the International Safety 208
Management (ISM) Code in relation to the Vessel and 209
thereafter during the currency of this Charter Party, the 210
Owners shall procure that both the Vessel and "the 211
Company" (as defined by the ISM Code) shall comply with 212
the requirements of the ISM Code. Upon request the 213
Owners shall provide a copy of the relevant Document of 214
Compliance (DOC) and Safety Management Certificate 215
(SMC) to the Charterers. 216
Except as otherwise provided in this Charter Party, loss, 217
damage, expense or delay caused by failure on the part of 218
the Owners or "the Company" to comply with the ISM Code 219
shall be for the Owners' account. 220

**18. Bills of Lading** 221
The Master is to sign Bills of Lading as presented without 222
prejudice to the terms, conditions and exceptions of this 223
Charter Party. If the Master delegates the signing of Bills of 224
Lading to his Agents, he shall give them authority to do so 225
in writing, copy of which is to be furnished to Charterers. 226
When Bills of Lading marked "Freight prepaid" are required, 227
same shall be released by Owners immediately upon receipt 228
of a telex from Charterers' Bank confirming that freight 229
payable has been irrevocably transferred. See Cl. 31. 230

**19. Relet** 231
~~Charterers have the right to relet all or part of this Charter~~ 232
~~Party, they remaining responsible for its due fulfilment.~~ 233

**20. Deviation** 234
Deviation in saving or attempting to save life or property at 235
sea or for bunkering purposes or any other reasonable 236
deviation shall not be deemed an infringement of this 237
Charter Party and the Owners shall not be liable for any 238
loss or damage resulting therefrom. 239

**21. Lien Clause** 240
The Owners shall have a lien on the cargo for freight, 241
deadfreight, demurrage, and average contribution due to 242
them under this Charter Party. 243

**22. Responsibilities and Immunities** 244
Except as otherwise provided and stipulated in this Charter 245
Party, it is hereby expressly agreed that this Charter Party 246
shall have effect subject to the provisions of the Hague Rules 247
contained in the International Convention for the Unification 248
of certain rules relating to Bills of Lading, dated Brussels 249
the 25th August 1924, as enacted in the country of shipment. 250
These rules shall apply to any Bill of Lading issued under 251
this Charter Party. 252
When no such enactment is in force in the country of 253
shipment, the corresponding legislation of the country of 254
destination shall apply, but in respect of shipments to which 255
no such enactments are compulsorily applicable, the terms 256
of the said Convention shall apply. 257
In trades where the International Brussels Convention 1924 258
as amended by the Protocol signed at Brussels on February 259
23rd, 1968 - The Hague - Visby Rules - apply compulsorily, 260
the provisions of the respective legislation shall apply. 261
The Owners shall in no case be responsible for loss of or 262
damage to cargo howsoever arising prior to loading into 263
and after discharge from the Vessel. 264

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

PART II

## "SYNACOMEX2000" Continent Grain Charterparty

~~Save to the extent otherwise in this Charter Party expressly~~ 265
~~provided, neither party shall be responsible for any loss or~~ 266
~~damage or delay or failure in performance hereunder~~ 267
~~resulting from Act of God, war, civil commotion, quarantine,~~ 268
~~strikes, lockouts, arrest or restraint of princes, rulers and~~ 269
~~peoples or any other event whatsoever which cannot be~~ 270
~~avoided or guarded against.~~ 271

**23. Amended General Ice Clause** 272
*Port of Loading* 273
a) In the event of the loading port being inaccessible by 274
reason of ice while Vessel is ready to proceed from her last 275
port or at any time during the voyage or on Vessel's arrival 276
or in case frost sets in after Vessel's arrival, the Master for 277
fear of being frozen in is at liberty to leave without cargo, 278
and this Charter Party shall be null and void. 279
b) If during the loading the Master, for fear of Vessel being 280
frozen in, deems it advisable to leave, he has liberty to do 281
so with what cargo he has on board and to proceed to any 282
other port or ports with option of completing cargo for 283
Owner's benefit to any port or ports including port of 284
discharge. Any part cargo thus loaded under this Charter 285
Party to be forwarded to destination at Vessel's expense 286
but against payment of freight, provided that no extra 287
expenses be thereby caused to the Receivers, freight being 288
paid on quantity delivered (in proportion if lumpsum), all 289
other conditions as per Charter Party. 290
c) In case of more than one loading port, and if one or more 291
of the ports are closed by ice, the Master or Owners to be 292
at liberty either to load the part cargo at the open port and 293
fill up elsewhere for their own account as under section b) 294
or to declare this Charter Party null and void unless 295
Charterers agree to load full cargo at the open port. 296
*Port of Discharge* 297
a) Should Ice prevent Vessel from reaching port of 298
discharge, Receivers shall have the option of keeping Vessel 299
waiting until the reopening of navigation and paying 300
demurrage, or of ordering the Vessel to a safe and 301
immediately accessible port where she can safely discharge 302
without risk of detention by Ice. Such orders to be given 303
within 48 hours after Master or Owners have given notice 304
to Charterers of the impossibility of reaching port of 305
destination. 306
b) If during discharging the Master for fear of Vessel being 307
frozen in deems it advisable to leave, he has liberty to do 308
so with what cargo he has on board and to proceed to the 309
nearest accessible port where she can safely discharge. 310
c) On delivery of the cargo at such port, all conditions of 311
the Bill of Lading shall apply and Vessel shall receive the 312
same freight as if she had discharged at the original port of 313
destination, except that if the distance of the substituted 314
port exceeds 100 nautical miles, the freight on the cargo 315
delivered at the substituted port to be Increased in 316
proportion. 317

**24. Amended Centrocon Strike Clause** 318
If the cargo cannot be loaded by reason of Riots, Civil 319
Commotions or of a Strike or Lock-out of any class of 320
workmen essential to the loading of the cargo, or by reason 321
of obstructions or stoppages beyond the control of the 322
Charterers caused by Riots, Civil Commotions or a Strike 323
or Lock-out on the Railways, or in the Docks, or other loading 324
places, or if the cargo cannot be discharged by reason of 325
Riots, Civil Commotions or of a Strike or Lockout of any 326
class of workmen essential to the discharge, the time for 327
loading or discharging, as the case may be, shall not count 328
during the continuance of such causes, provided that a 329

Strike or Lock-out of the Shippers' and/or Receivers' men 330
shall not prevent demurrage accruing if by the use of 331
reasonable diligence they could have obtained other suitable 332
labour at rates current before the Strike or Lock-out. 333
In case of any delay by reason of the before-mentioned 334
causes, no claim for damages or demurrage, shall be made 335
by the Charterers / Receivers of the cargo, or Owners of 336
the Vessel. For the purpose, however, of settling despatch 337
money accounts, any time lost by the Vessel through any of 338
the above causes shall be counted as time used in loading 339
or discharging, as the case may be. 340

**25. General Average and New Jason Clause** 341
General average shall be adjusted according to the York- 342
Antwerp Rules 1994 or any subsequent modification thereof, 343
but where the adjustment is made in accordance with the 344
law and practice of the United States of America, the 345
following Clause shall apply: 346
"In the event of accident, danger, damage or disaster 347
before or after the commencement of the voyage, 348
resulting from any cause whatsoever, whether due to 349
negligence or not, for which, or for the consequence of 350
which, the carrier is not responsible, by statute, contract 351
or otherwise, the goods, shippers, consignees, or owners 352
of the goods shall contribute with the carrier in general 353
average to the payment of any sacrifices, losses or 354
expenses of a general average nature that may be made 355
or incurred and shall pay salvage and special charges 356
incurred in respect of the goods. 357
If a salving ship is owned or operated by the carrier, 358
age shall be paid for as fully as if the said salving 359
ship or ships belonged to strangers. Such deposit as the 360
carrier or his Agents may deem sufficient to cover the 361
estimated contribution of the goods and any salvage and 362
special charges thereon shall, if required, be made by 363
the goods, shippers, consignees or owners of the goods 364
to the carrier before delivery" 365
and the Charterers shall procure that all Bills of Lading issued 366
under this Charter Party shall contain the same Clause. 367

**26. Both-to-Blame Collision Clause** 368
If the liability for any collision in which the Vessel is involved 369
while performing this Charter Party falls to be determined 370
in accordance with the laws of the United States of America, 371
the following Clause shall apply: 372
"If the ship comes into collision with another ship as a result 373
of the negligence of the other ship and any act, neglect or 374
default of the master, mariner, pilot or the servants of the 375
carrier in the navigation or in the management of the ship, 376
the owners of the goods carried hereunder will indemnify 377
the carrier against all loss or liability to the other or non- 378
carrying ship or her owners in so far as such loss or liability 379
represents loss of or damage to or any claim whatsoever 380
of the owners of the said goods, paid or payable by the 381
other or non-carrying ship or her owners to the owners of 382
the said goods and set off, recouped or recovered by the 383
other or non-carrying ship or her owners as part of their 384
claim against the carrying ship or carrier. 385
The foregoing provisions shall also apply where the 386
Owners, Operators or those in charge of any ship or ships 387
or objects other than, or in addition to, the colliding ships or 388
objects are at fault in respect to a collision or contact" 389
and the Charterers shall procure that all Bills of Lading issued 390
under this Charter Party shall contain the same Clause. 391

**27. War risks ("Voywar 1993")** 392
a) For the purpose of this Clause, the words: 393
(i) "Owners" shall include the shipowners, bareboat 394
charterers, disponent-owners, managers or other operators 395
who are charged with the management of the Vessel, and 396

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.

PART II

"SYNACOMEX2000" Continent Grain Charterparty

the Master; and 397
(ii) "War Risks" shall include any war (whether actual or 398
threatened), act of war, civil war, hostilities, revolution, 399
rebellion, civil commotion, warlike operations, the laying of 400
mines (whether actual or reported), acts of piracy, acts of 401
terrorists, acts of hostility or malicious damage, blockades 402
(whether imposed against all vessels or imposed selectively 403
against vessels of certain flags or ownership, or against 404
certain cargoes or crews or otherwise howsoever), by any 405
person, body, terrorist or political group, or the Government 406
of any state whatsoever, which, in the reasonable judgment 407
of the Master and/or the Owners, may be dangerous or are 408
likely to be or to become dangerous to the Vessel, her cargo, 409
crew or other persons on board the Vessel. 410
b) If at any time before the Vessel commences loading, it 411
appears that, in the reasonable judgment of the Master 412
and/or the Owners, performance of the Charter Party, or 413
any part of it, may expose, or is likely to expose, the Vessel, 414
her cargo, crew or other persons on board the Vessel to 415
War Risks, the Owners may give notice to the Charterers 416
cancelling this Charter Party, or may refuse to perform such 417
part of it as may expose, or may be likely to expose, the 418
Vessel, her cargo, crew or other persons on board the Vessel 419
to War Risks; provided always that if this Charter Party 420
provides that loading or discharging is to take place within a 421
range of ports, and at the port or ports nominated by the 422
Charterers the Vessel, her cargo, crew, or other persons 423
onboard the Vessel may be exposed, or may be likely to be 424
exposed, to War Risks, the Owners shall first require the 425
Charterers to nominate any other safe port which lies within 426
the range for loading or discharging, and may only cancel 427
this Charter Party if the Charterers shall not have nominated 428
such safe port or ports within 48 hours of receipt of notice of 429
such requirement. 430
c) The Owners shall not be required to continue to load 431
cargo for any voyage, or to sign Bills of Lading for any port 432
or place, or to proceed or continue on any voyage, or on 433
any part thereof, or to proceed through any canal or 434
waterway, or to proceed to or remain at any port or place 435
whatsoever, where it appears, either after the loading of 436
the cargo commences, or at any stage of the voyage 437
thereafter before the discharge of the cargo is completed, 438
that, in the reasonable judgment of the Master and/or the 439
Owners, the Vessel, her cargo (or any part thereof), crew 440
or other persons on board the Vessel (or any one or more 441
of them) may be, or are likely to be, exposed to War Risks. 442
If it should so appear, the Owners may by notice request 443
the Charterers to nominate a safe port for the discharge of 444
the cargo or any part thereof, and if within 48 hours of 445
receipt of such notice, the Charterers shall not have 446
nominated such a port, the Owners may discharge the cargo 447
at any safe port of their choice (including the port of loading) 448
in complete fulfilment of the Charter Party. The Owners shall 449
be entitled to recover from the Charterers the extra expenses 450
of such discharge and, if the discharge takes place at any 451
port other than the loading port, to receive the full freight as 452
though the cargo had been carried to the discharging port 453
and if the extra distance exceeds 100 miles, to additional 454
freight which shall be the same percentage of the freight 455
contracted for as the percentage which the extra distance 456
represents to the distance of the normal and customary 457
route, the Owners having a lien on the cargo for such 458
expenses and freight 459
d) If at any stage of the voyage after the loading of the 460
cargo commences, it appears that, in the reasonable 461
judgment of the Master and/or the Owners, the Vessel, 462
her cargo, crew or other persons on board the Vessel may 463

be, or are likely to be, exposed to War Risks on any part of 464
the route (including any canal or waterway) which is normally 465
and customarily used in a voyage of the nature contracted 466
for, and there is another longer route to the discharging 467
port, the Owners shall give notice to the Charterers that 468
this route will be taken. In this event the Owners shall be 469
entitled, if the total extra distance exceeds 100 miles, to 470
additional freight which shall be the same percentage of 471
the freight contracted for as the percentage which the extra 472
distance represents to the distance of the normal and 473
customary route. 474
e) The Vessel shall have liberty:· 475
(i) to comply with all orders, directions, recommendations or 476
advice as to departure, arrival, routes, sailing in convoy, 477
ports of call, stoppages, destinations, discharge of cargo, 478
delivery or in any way whatsoever which are given by the 479
Government of the Nation under whose flag the Vessel sails, 480
or other Government to whose laws the Owners are subject, 481
or any other Government which so requires, or any body or 482
group acting with the power to compel compliance with their 483
orders or directions; 484
(ii) to comply with the orders, directions or recom- 485
mendations of any war risks underwriters who have the 486
authority to give the same under the terms of the war risks 487
insurance; 488
(iii) to comply with the terms of any resolution of the Security 489
Council of the United Nations, any directives of the European 490
Community, the effective orders of any other Supranational 491
body which has the right to issue and give the same, and 492
with national laws aimed at enforcing the same to which 493
the Owners are subject, and to obey the orders and 494
directions of those who are charged with their enforcement; 495
(iv) to discharge at any other port any cargo or part thereof 496
which may render the Vessel liable to confiscation as a 497
contraband carrier; 498
(v) to call at any other port to change the crew or any part 499
thereof or other persons on board the Vessel when there is 500
reason to believe that they may be subject to internment, 501
imprisonment or other sanctions; 502
(vi) where cargo has not been loaded or has been 503
discharged by the Owners under any provisions of this 504
Clause, to load other cargo for the Owners' own benefit 505
and carry it to any other port or ports whatsoever, whether 506
backwards or forwards or in a contrary direction to the 507
ordinary or customary route. 508
f) If in compliance with any of the provisions of sub-clauses 509
b) to e) of this Clause anything is done or not done, such 510
shall not be deemed to be a deviation, but shall be 511
considered as due fulfilment of the Charter Party. 512

28. Arbitration and General Average 513
Any dispute arising out of the present contract shall be 514
referred to Arbitration of ~~"Chambre Arbitrale Maritime de~~ 515
~~Paris—16 rue Daunou—75002 Paris"~~ in London, English 516
Law to apply( See Cl.42) 517
The decision rendered according to the rules of Chambre 518
~~Arbitrale and according to French Law~~ shall be final and 519
binding upon both parties. The right of both parties to refer 520
any disputes to arbitration ceases twelve months after date 521
of completion of discharge or, in case of cancellation or non- 522
performance, twelve months after the cancelling date as per 523
Clause 6 or after the actual date of cancellation whichever is 524
the later. Where this provision is not complied with, the claim 525
shall be deemed to be waived and absolutely barred.

This document is a computer generated SYNACOMEX 2000 form printed by authority of SYNDICAT NATIONAL DU COMMERCE EXTERIEUR DES CEREALES (SYNACOMEX). Any insertion or deletion to the form must be clearly visible. In the event of any modification made to the pre-printed text of this document which is not clearly visible, the text of the original SYNACOMEX document shall apply. BIMCO and SYNACOMEX assume no responsibility for any loss, damage or expense as a result of discrepancies between the original SYNACOMEX document and this computer generated document.



m/v 'Camel' Charter Party dated September 20th , 2007

Rider Clauses to the m/v "Camel" C/P dated September 20th , 2007

### 29. Ship's details

MV CAMEL
TYPE: selftrimming bulk carrier, singledecker
IMO NUMBER: 7528675
CLASS: Bureau Veritas
FLAG: Panama
BUILT: 1978
DWAT: 44.750 MT
DWCC: ABT 44.000 MT STW=DWT
MAX DRAFT SSW: 12.249
LOA / BM: 182.82 M / 30.12M
LBP / DM: 176,57 M / 16,85 M
GT / NT: 26.194 / 14.930
GRAIN: 1,910,633 CUBIC FEET/
NOS OF HOLDS/HATCHES: 6 / 6
CARGO GEAR: VSL TO BE CONSIDERED AS GEARLESS LOCATION OF ENG/BR: all aft
FITTED: grain
TPC: 49 T IN LOAD CONDITION
DIST WLTOHC IN BLST: ABT FRD 14.0 M AND ABT AFT 12,5 M TYPE OF HATCHCOVERS:
MACGREGOR STEEL HATCH COVERS FOLDING TYPE
HATCH DIMENSIONS: NO 1 = 11.9 X 13.9 M NOT WORKABLE AS LESS 14 M REQUESTED)
NO 2 - 6 = 15.1 X 16.5 M HOLD DIMS NO 1 = 19.15 X 29.4 X 17.0 M NO 2 - 5 = 20.55 X 29.4 X 17.0
M NO 6 = 16.95 X 29.4 X 17.0 M

GRAIN/BALE CUBIC BREAKDOWN EACH HOLD

HOLDS M3 /GRAIN

HOLD NO 1 8213 M3
HOLD NO 2 9147 M3
HOLD NO 3 9507 M3
HOLD NO 4 9466 M3
HOLD NO 5 9176 M3
HOLD NO 6 8594 M3

TOTAL 54.103 M3

ALL ABV ABT

REGISTERED OWNERS: GRANVILLE NAVIGATION S.A

- ITINERARY: OPEN PIREAUS 23 SEPT, ETA NOVO 26/28TH SEPT. SEPT.
- LAST 3 CARGOES: R.PHOSPHATE/ UREA / CLINKER
- OWNRS CONFIRM THAT VSL IS GRAIN CLEAN AND HAS ON BOARD VALID DOCUMENT OF
AUTHORIZATION FOR CARRIAGE OF GRAINS IN BULK
- VESSEL'S HOLDS TO BE CLEAN AND DRY CLEAR OF ALL LOOSE SCALE RUST/PAINT
FLAKES/ VERMINS/ OIL STAINS / PREVIOUS CARGO RESIDUES AND ALSO NOT TO BE
FRESHLY PAINTED PRIOR LOADING OF THE DESIGNATED GRAIN CARGO(ES).

- NAME/REGISTRATION/OWNERSHIP/CLASS/ISM CERTIFICATION/PANDI CLUB/H+M
INSURANCE NOT TO BE CHANGED OR TRANSFERRED THROUGHOUT WHOLE TRIP
DURATION.

1

m/v 'Camel' Charter Party dated September 20th , 2007

- VESSEL NOT TO BE SCHEDULED FOR BREAK-UP OR SOLD FOR SCRAP DURING WHOLE
TRIP DURATION OR IMMEDIATELY AFTER REDELIVERY AND THIS TRIP NOT TO BE THE LAST
TRIP BEFORE ANY SUCH SCHEDULING OF VESSEL FOR BREAK-UP OR SCRAP.
- THE HOLD HAVE NATUREL VENTILATION/HOLD ACCESS MUST BE WATER
PROOF/WEATHER PROOF AND TESTED FOR LEAKAGE.
- OWNERS TO RPOVIDE CHTRS WITH CERTIFICATE ISSUED BY VESSEL OWNERS/THEIR
AGENTS/MASTER OF THE CARRYING VESSEL, STATING THAT THE VESSEL IS FULLY
CLASSIFIED LLOYD'S 100 A1 OR EQUIVALENT AND IS COVERED BY A FIRST CLASS P&I CLUB
AND HAVE A VALID I.S.M. CODE AS REQUIRED UNDER THE SOLAS CONVENTION 1974 .

OWNERS TO PROVIDE CHARTERERS WITH

- CERTIFICATE ISSUED BY VESSEL OWNERS/THEIR AGENTS/MASTER OF
- THE CARRYING VESSEL, STATING THAT THE VESSEL IS FULLY CLASSIFIED
- LLOYD'S 100 A1 OR EQUIVALENT AND IS COVERED BY A FIRST CLASS P&I CLUB
- AND HAVE A VALID I.S.M. CODE AS REQUIRED UNDER THE SOLAS

- CERTIFICATE ISSUED BY THE VESSEL OWNERS/THEIR AGENTS/MASTER OF THE VESSEL,
CONFIRMING THAT THE VESSEL COMPLIES WITH THE REQUIREMENTS OF THE
INTERNATIONAL CODE FOR THE SECURITY OF SHIPS AND OF PORT FACILITIES (ISPS CODE)
AND CARRIES WITHIN HER DOCUMENTS THE INTERNATIONAL SHIP SECURITY CERTIFICATE
(ISSC).

- CERTIFICATE FROM THE VESSEL OWNERS/THEIR AGENTS/MASTER, STATING THAT THE
VESSEL HAS NOT CARRIED ANY HAZARDOUS CARGO/CHEMICALS/FERTILIZERS DURING
HER LAST VOYAGE.

VESSEL HAS GIVEN AS GEARLESS

### 30. Freight payment

Freight to be paid by the Charterers 100% less commissions only within 2 banking  days after signing
and releasing of Bills of Lading marked "Freight payable as per Charter Party dated 20.09.2007", will
not commence discharge and all time lost till Owners receiving the freight to count as laytime and any
expenses resulted therefrom to be for Charterers' account, and upon presentation of  Owners' Invoice
by fax via the Brokers less commissions only.

Freight is payable by irrevocable bank transfer in U.S.A. currency to Owners' account.

Full freight deemed earned on shipment of cargo discountless and non-returnable ship and/or cargo
lost or not lost.

### 31. Bills of Lading

The Bills of Lading to be marked "Clean on board" and "Freight Payable as per Charter-Party dated
20.09.2007" or "Freight Prepaid" in Charterers option.
If marked "Freight Prepaid", Bills of Lading to be kept under the Owners' Agents' custody and to be
released immediately upon Owners' receipt of the freight payment.
In case of the original Bills of Lading are not available upon arrival, the Owners guarantee to discharge
cargo without presentation of the original Bills of Lading against the Letter of Indemnity in Owners' P&I
wording, signed and stamped by Charterers only.

m/v 'Camel' Charter Party dated September 20th , 2007

**32. Notice of Readiness**
To be tendered as per cl. 8, via telex, internet mail or telefax after vessel's arrival at pilot station whether in berth or not, whether in port or not, whether in free pratique or not, whether customs cleared or not.

At loading port N.O.R. to be tendered at any time, day or night, Sundays and Holidays including, but not prior to first layday.

At discharging port N.O.R. to be tendered within working hours from 08:00LT on Saturday until 17:00LT Wednesday and from 08:00LT to 12:00LT on Thursday.
Lay time to commence at the same day at 14.00 hours if Notice of Readiness is tendered before noon and at 08.00 hours on the next working day if Notice of Readiness is tendered after noon.

**33. Laytime**
At loading port laytime starts to count, Saturday, Sunday and Holiday including, after tendering N.O.R. as per cl. 8.
Time used before commencement of laytime is not to count.
Lay time to commence at the same day at 14.00 hours if Notice of Readiness is tendered before noon and at 08.00 hours on the next working day if Notice of Readiness is tendered after noon.
Charterers are entitled for 3 hours not to count as lay time if used for the preparation of cargo documents and not combined with loading.
At loading port vessel's shifting to be for Charterers' account and time.

At discharging port the time from 17:00LT on Thursday or the day preceding a holiday till 08:00LT on Saturday or the day following the holiday are not to count as laytime even if used.
Lay time to commence at the same day at 14.00 hours if Notice of Readiness is tendered before noon and at 08.00 hours on the next working day if Notice of Readiness is tendered after noon.

At discharging port the shifting time and expenses in case of the first shifting, if any, to be for Owners' account and time to count. In case of further shifting to be for Charterers' account and time to count.

Laytime is non-reversible.
The holidays to be as per BIMCO 2007 Holidays Calender.
The national holidays not to count as laytime.

**34. Demurrage and Despatch money**
Demurrage/Despatch, if any is payable within 10 days after fax presentation of the Owners' Invoice duly supported by Statement(s) of Facts and Notice(s) of Readiness duly signed by Master/ Agents only.

**35. Cargo quantity**
The cargo quantity to be determined by the joint draft survey of Master and Independent Surveyor. In case of the cargo quantity to be determined by the silo scale, Charterers to guarantee that Owners/Master will not be responsible for the difference, if any between the draft survey figure and the shore figure determined by the silo scale.

**36. Cargo quality**
Charterers guarantee that cargo will be sound, not damaged and without debris.
Master has the right to reject any unclean/unsound and/or damaged cargo and request the replacement of same with sound/clean cargo and Charterers undertake to supply sound cargo at their time, risk and expenses.

**37. Stevedore damages**
Any damage caused by stevedores during the currency of this Charter Party shall be reported by Master to Charterers or their Agents and to their Stevedores in writing or by telex as soon as reasonably possible but max in 24 hrs, failing which Charterers shall not be held responsible. Master shall obtain the written acknowledgement from Stevedores of liability before changing of gang shift.

3

m/v 'Camel' Charter Party dated September 20th, 2007

The stevedore damage to be settled directly between Owners and Stevedores.
Charterers will assist Owners to recover eventual stevedores damages.
However, in the event when Owners are not able to obtain recovery from Stevedores, Charterers
remain ultimately responsible.

### 38. Fumigation
The cargo to be fumigated for Charterers' time and account.
The vessel should be ventilated after the fumigation 48 hrs before the arrival at discharging port in
order to avoid the concentration of the chemical smell, which may affect the wheat.

### 39. Agents
At the loading port as follows:

DELTA-C LLC.
Novorossiysk, 353900 Russia
phone: +7 8617 678733
fax : +7 8617 678755
e-mail: delta@ma-delta.com
telex : (51) 94075814 delt g.
MIC: Alexander Shutkin
phone: +7 8617 678744

At the discharging port to be nominated by Charterers subject to the pro-forma D/A as per the official
tariffs the latest upon the loading completion.

### 40. BIMCO ISPS/MTSA CLAUSE FOR VOYAGE CHARTER PARTIES 2005
(a)(i) The Owners shall comply with the requirements of the International Code for the Security of
Ships and of Port Facilities and
the relevant amendments to Chapter XI of SOLAS (ISPS Code) relating to the Vessel and "the
Company" (as defined by the ISPS Code).
If trading to or from the United States or passing through United States waters, the Owners shall also
comply with the requirements of
the US Maritime Transportation Security Act 2002 (MTSA) relating to the Vessel and the "Owner" (as
defined by the MTSA).
(ii) Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship
Security Certificate
(or the Interim International Ship Security Certificate) and the full style contact details of the Company
Security Officer (CSO).
(iii) Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay)
caused by failure on the part of the Owners or
"the Company"/"Owner" to comply with the requirements of the ISPS Code/MTSA or this Clause shall
be for the Owners' account, except as
otherwise provided in this Charter Party.
(b)(i) The Charterers shall provide the Owners and the Master with their full style contact details and,
upon request, any other information
the Owners require to comply with the ISPS Code/MTSA.
(ii) Loss, damages or expense (excluding consequential loss, damages or expense) caused by failure
on the part of the Charterers to comply with
this Clause shall be for the Charterers' account, except as otherwise provided in this Charter Party,
and any delay caused by such failure shall
count as laytime or time on demurrage.
(c) Provided that the delay is not caused by the Owners' failure to comply with their obligations under
the ISPS Code/MTSA, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, the Vessel shall be entitled
to tender Notice of Readiness even if not cleared
due to applicable security regulations or measures imposed by a port facility or any relevant authority
under the ISPS Code/MTSA.
(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the
ISPS Code/MTSA shall count as laytime or

4

m/v 'Camel' Charter Party dated September 20th , 2007

time on demurrage, unless such measures result solely from the negligence of the Owners, Master or crew or the previous trading of the Vessel,
the nationality of the crew or the identity of the Owners' managers.
(d) Notwithstanding anything to the contrary provided in this Charter Party, any costs or expenses whatsoever solely arising out of or related to security regulations or
m/v 'Capital Sky' Charter Party dated August 21st, 2007
measures required by the port facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not limited to, security guards, launch services,
vessel escorts, security fees or taxes and inspections, shall be for the Charterers' account, unless such costs or expenses result solely from the negligence of the Owners,
Master or crew or the previous trading of the Vessel, the nationality of the crew or the identity of the Owners' managers.
All measures required by the Owners to comply with the Ship Security Plan shall be for the Owners' account.
(e) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

### 41. Paramount Clause General

The International Convention for the Unification of Certain Rules of Law relating to Bills of Lading signed at Brussels on 25 August 1924 ("the Hague Rules") as amended by
the Protocol signed at Brussels on 23 February 1968 ("the Hague-Visby Rules") and as enacted in the country of shipment shall apply to this Contract. When the Hague-Visby
Rules are not enacted in the country of shipment, the corresponding legislation of the country of destination shall apply, irrespective of whether such legislation may only
regulate outbound shipments.
When there is no enactment of the Hague-Visby Rules in either the country of shipment or in the country of destination, the Hague-Visby Rules shall apply to this Contract
save where the Hague Rules as enacted in the country of shipment or if no such enactment is in place, the Hague Rules as enacted in the country of destination apply
compulsorily to this Contract.
The Protocol signed at Brussels on 21 December 1979 ("the SDR Protocol 1979") shall apply where the Hague-Visby Rules apply, whether mandatorily or by this Contract.
The Carrier shall in no case be responsible for loss of or damage to cargo arising prior to loading, after discharging, or while the cargo is in the charge of another carrier, or
with respect to deck cargo and live animals."

### 42. Dispute Resolution Clause. English Law, London Arbitration

(a) This Charter Party shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this Charter Party shall be
referred to arbitration in London in accordance with the Arbitration Act 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to
the provisions of this Clause.
The arbitration shall be conducted in accordance with the London Maritime Arbitrators Association (LMAA) Terms current at the time when the arbitration proceedings are
commenced.
The reference shall be to three arbitrators. A party wishing to refer a dispute to arbitration shall appoint its arbitrator and send notice of such appointment in writing to the other
party requiring the other party to appoint its own arbitrator within 14 calendar days of that notice and stating that it will appoint its arbitrator as sole arbitrator unless the other
party appoints its own arbitrator and gives notice that it has done so within the 14 days specified. If the other party does not appoint its own arbitrator and give notice that it
has done so within the 14 days specified, the party referring a dispute to arbitration may, without the requirement of any further prior notice to the other party, appoint its

arbitrator as sole arbitrator and shall advise the other party accordingly. The award of a sole arbitrator shall be binding on both parties as if he had been appointed by
agreement.
Nothing herein shall prevent the parties agreeing in writing to vary these provisions to provide for the appointment of a sole arbitrator.

m/v 'Camel' Charter Party dated September 20th , 2007

In cases where neither the claim nor any counterclaim exceeds the sum of USD 50,000 (or such other sum as the parties may agree) the arbitration shall be conducted in
accordance with the LMAA Small Claims Procedure current at the time when the arbitration proceedings are commenced.
(b) Notwithstanding the above, the parties may agree at any time to refer to mediation any difference and/or dispute arising out of or in connection with this Contract.
In the case of a dispute in respect of which arbitration has been commenced under the above, the following shall apply:-
(i) Either party may at any time and from time to time elect to refer the dispute or part of the dispute to mediation by service on the other party of a written notice (the
"Mediation Notice") calling on the other party to agree to mediation.
(ii) The other party shall thereupon within 14 calendar days of receipt of the Mediation Notice confirm that they agree to mediation, in which case the parties shall thereafter
agree a mediator within a further 14 calendar days, failing which on the application of either party a mediator will be appointed promptly by the Arbitration Tribunal ("the
Tribunal") or such person as the Tribunal may designate for that purpose. The mediation shall be conducted in such place and in accordance with such procedure and on such
terms as the parties may agree or, in the event of disagreement, as may be set by the mediator.
(iii) If the other party does not agree to mediate, that fact may be brought to the attention of the Tribunal and may be taken into account by the Tribunal when allocating the
costs of the arbitration as between the parties.
(iv) The mediation shall not affect the right of either party to seek such relief or take such steps as it considers necessary to protect its interest.
(v) Either party may advise the Tribunal that they have agreed to mediation. The arbitration procedure shall continue during the conduct of the mediation but the Tribunal may
take the mediation timetable into account when setting the timetable for steps in the arbitration.
(vi) Unless otherwise agreed or specified in the mediation terms, each party shall bear its own costs incurred in the mediation and the parties shall share equally the mediator's
costs and expenses.
(vii) The mediation process shall be without prejudice and confidential and no information or documents disclosed during it shall be revealed to the Tribunal except to the
extent that they are disclosable under the law and procedure governing the arbitration.

43.
All negotiations and eventual fixture details to remain strictly private and confidential between the Parties involved.


For the Owners                                    For the Charterers


DELTA MARITIME AGENCY INC.
ΥΠΗΡΕΣΙΕΣ ΝΑΥΛΟΜΕΣΙΤΩΝ
ΕΤΑΙΡΙΑ Α.Ν. 89-67
ΑΛΚΥΟΝΗΣ 3 - Π. ΦΑΛΗΡΟ ΤΚ 175 61
ΑΦΜ: 999063736 - ΔΟΥ ΠΛΟΙΩΝ ΠΕΙΡΑΙΑ
ΤΗΛ. 210 9833624 - FAX. 210 9833654