BLANK ROME, LLP
Attorneys for Defendant
Transgrain Shipping (Singapore) Pte. Ltd.
Jack A. Greenbaum (JG 0039)
405 Lexington Ave.
New York, N. Y. 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GRANVILLE NAVIGATION S.A.

        Plaintiff,                        07 CV 9823 (CM)

       – v –

TRANSGRAIN SHIPPING (SINGAPORE)
PTE. LTD.

        Defendant.

---

### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE OR REDUCE ATTACHMENT

### PRELIMINARY STATEMENT

This memorandum and the accompanying Declarations of Jack A. Greenbaum, Timothy Hill and Katrakis Iraklis, are submitted in support of Defendant's motion, pursuant to Rules E(4)(f) and (6) of the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions, to vacate or reduce the maritime attachment herein on the grounds Plaintiff sustained no damages as a matter of law. So far, electronic fund transfers amounting to $625,363.47 have been restrained, and Plaintiff continues to serve Process of Maritime Attachment and Garnishment on several banks each day.

Plaintiff, as Owner of the M/V CAMEL, claims that Defendant, as Charterer, wrongfully repudiated a charter party ("the Charter") before performance commenced. The Charter provides

for arbitration in London under English law. Plaintiff seeks damages of $937,335.45, plus anticipated interest, lawyers' fees, and arbitrators' fees, for a total of $1,220,695.30.

The Complaint asserts (at ¶ 9) that the claim is comprised of a ballast bonus stipulated in the charter party, plus the Suez Canal dues and fuel costs incurred in proceeding to the delivery port specified in the Charter, plus charter hire for 14.83 days before the vessel commenced a substitute charter. As a matter of law, however, that is not the measure of damages for non-performance of a charter party.

As a matter of both American and English law, the measure of damages is the difference between what Plaintiff would have earned under the Charter and what it did earn under a substitute charter party in the same period of time, *infra*. It is an indisputable fact that the charter market rose precipitously before performance of the Charter would have commenced. Therefore, Plaintiff in fact earned at least as much as it would have earned under the Charter and sustained no damages, *infra*.

As shown in the Declaration of charter broker Katrakis Iraklis, the net revenue Plaintiff would have earned under the Charter was $2,199,250 (or $34,275 per day net of expenses), taking into account the ballast bonus and the Canal and fuel expenses that are itemized in the Complaint. As further shown by Mr. Iraklis' Declaration and the published reports of charters made in the relevant time frame annexed thereto, the charter market value of the CAMEL at the time the Charter would have been commenced was at least $50,000 per day. The ship would have been employed under the Charter for 70 days. According to the Complaint, Plaintiff lost 15 days before commencing a substitute charter. Therefore, Plaintiff earned revenue for only 55 days out of the 70 days the ship would have been employed under the Charter. If Plaintiff earned at least $50,000 per day for those 55 days, Plaintiff's net income for the entire 70 day period

128872.00601/6616502v.1

(including 15 days of zero revenue) was at least $2,750,000. This is over a half million dollars greater than Plaintiff would have earned under the Charter.

If, however, Plaintiff contends its profits on a substitute charter were less than they would have been under the Charter for the same period of time, Plaintiff should be directed to produce the substitute charter and the documents evidencing Plaintiff's actual revenues, expenses, and profit, so the Court may determine the appropriate amount of security commensurate with the legal measure of damages, if any.

## ARGUMENT

### POINT I

### DEFENDANT IS ENTITLED TO A PROMPT HEARING AT WHICH PLAINTIFF MUST CARRY THE BURDEN OF SHOWING WHY THE ATTACHMENT SHOULD NOT BE VACATED OR REDUCED

Supplemental Rule E(4)(f) provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.***[1]

Rule E.1 of the Local Admiralty and Maritime Rules provides:

> The adversary hearing following arrest or attachment or garnishment that is called for in Supplemental Rule E(4)(f) shall be conducted by a judicial officer within three court days, unless otherwise ordered.

Thus, "the court is required to hold a hearing as promptly as possible to determine whether to allow the arrest or attachment to stand. The plaintiff has the burden of showing why the seizure should not be vacated." Advisory Committee Notes to Rule E(4)(f).

Defendant requests a reasonably prompt hearing at the Court's convenience, not necessarily within three days as contemplated in Local Rule E.1.

---

[1] Emphasis throughout this Memorandum is added by us unless otherwise indicated.

## POINT II

### AS A MATTER OF LAW, PLAINTIFF HAS NOT SUSTAINED ANY DAMAGES

Supplemental Rule E(4)(f) makes it the plaintiff's burden to show why vacatur or "other relief . . . consistent with these rules" should not be granted. "Other relief" includes a reduction in security. Supplemental Rule E(6) provides: "Whenever security is taken the court may, on motion and hearing, for good cause shown, reduce the amount of security given . . . ."

In Transportes Navieros Y Terrestes S.A. de D.V. v. Fairmount Heavy Transport N.V., 07 CV 3076 (LAP), 2007 U.S. Dist. LEXIS 50260, *13-16 (S.D.N.Y. July 6, 2007), the Court noted, at *13, that it may determine what good cause is because "[t]he inherent power to adapt an admiralty rule to the equities of a particular situation is entrusted to the sound discretion of the district judge sitting as an admiralty judge . . .," quoting Greenwich Marine, Inc. v. S.S. Alexandra, 339 F. 2d 901, 905 (2d Cir. 1965). The Court reduced the amount of security because the undisputed facts showed the plaintiff had failed to mitigate its damages.

Plaintiff's burden to show why the attachment should not be vacated or reduced includes demonstrating whose law is applicable and what that law is. OGI Oceangate Transportation Co. Ltd. v. RP Logistics Pvt. Ltd., 06 Civ. 9441(RWS), 2007 U.S. Dist. LEXIS 46841, *14-15 (S.D.N.Y. June 26, 2007), reconsideration denied, 2007 U.S. Dist. LEXIS 74180 (S.D.N.Y. Oct. 4, 2007).

Foreign law is considered an issue of law, not fact. F. R. Civ. P. Rule 44.1. If foreign law applies to a claim, this Court is required to interpret and apply that foreign law to determine whether a prima facie claim is stated. OGI, *supra*. For example, a number of decisions have vacated attachments because, as a matter of English law, a premature indemnity claim fails to state a prima facie claim. See Sonito Shipping Co. Ltd. v. Sun United Maritme Ltd., 06 Civ.

4

15308, 2007 U.S. Dist. LEXIS 19531, *9-10, 19 (S,D,N.Y. March 16, 2007); Bottiglieri di Navigazione S.P.A. v. Tradeline LLC, 06 Civ. 3705 (LAK), 2007 U.S. Dist. LEXIS 8278 (S.D.N.Y. Feb. 6, 2007).

Additionally, the Court should take into account any undisputed facts in determining whether an attachment can be sustained. OGI, 2007 U. S. Dist. LEXIS 74180 at **7. In Transportes Navieros, supra, at *13-16, the Court reduced the amount of security because the undisputed facts showed the plaintiff had failed to mitigate its damages.

In Sea Transport Contractors ltd. V. Industries Chemiques du Senegal, 411 F. Supp. 2d 386 (S.D.N.Y. 2006), the attachment was reduced where alleged damages exceeded what the Court considered to be recoverable under the contract at issue.

In Daeshin Shipping co. Ltd. V. Meridian Bulk Carriers, Ltd., 05 Civ. 7173, 2005 U.S. Dist. LEXIS 22409 (S.D.N.Y. Oct. 3, 2005), an attachment was reduced to the extent the plaintiff failed to produce sufficient evidence to justify the amount.

In Dongbu Express Co. v. Navios Corp., 944 F. Supp. 235 (S.D.N.Y. 1996), the Court reduced the amount of an attachment to account for savings to the plaintiff. The Court rejected the plaintiff's argument that the amount of savings was a fact issue that could only be resolved by expert testimony, and wrote: "in determining appropriate security, only a reasonable estimate of savings – not an accurate calculation – is needed. Therefore, security should be reduced to account for the estimated amount of savings."

As shown by the Declaration of Timothy Hill, an experienced English barrister specialising in shipping law and international trade, at ¶ 12:

> In these circumstances, the damages are normally calculated by making a comparison between the gross profit (namely freight, demurrage and other charges, less voyage expenses) which the owner would have derived from the broken charterparty, and the

> gross profit which he has earned under the substitute charter or charters, the latter being apportioned so as to reflect the amount earned up to the date when the performance of the original charter would have been completed: *Voyage Charters* 3rd ed. Para 21.90

The text from which Mr. Hill quotes is well regarded and often cited. It comprises an English law chapter followed by an American law chapter on each of the subtopics of the subject for which it is named. Julian Cooke, *et al,* Voyage Charters (3rd Ed. 2007)

U. S. law is the same. The measure of a ship owner's damages for a charterer's nonperformance of a charter party is "the difference between what it did earn and what it would have earned during the time that would have been required to fulfil the charter of which he was wrongfully deprived." United Transp. Co. v. Berwind White Coal Mining Co., 13 F. 2d 282, 284 (2d Cir. 1926). See also Ainesworth Coal & Iron Co. v. Trafikaktiedolaget Grangesberg Oxelosund, 287 F. 291, 296 (4th Cir. 1923); Orion Shipping & Trading Co. v Eastern States Petroleum Corp., 206 F.Supp.777, 781 (S.D.N.Y. 1964); Cargo Ships El Yam, Ltd. v. The Stearns & Foster Co., Inc., 149 F. Supp. 754, 765 (S.D.N.Y. 1955); Aaby v. States Marine Corp., 107 F. Supp. 484, 486 (S.D.N.Y. 1951).

Mr. Hill's Declaration also points out, at ¶¶ 16, 19, that the costs of proceeding to the loading port are to be included in the voyage expenses deducted from the anticipated revenue in calculating the net revenue the ship owner would have earned under the unperformed charter. They are not treated as separately recoverable items of damage.

If Plaintiff claims it earned less on a substitute charter party than it would have earned under the Transgrain charter party, then it is Plaintiff's burden to produce the evidence showing why its attachment should not be vacated or reduced.

## CONCLUSION

### THE ATTACHMENT SHOULD BE VACATED OR REDUCED

Dated: New York, N. Y.
February 19, 2008

Respectfully submitted,

BLANK ROME LLP
Attorneys for Transgrain Shipping
(Singapore) Pte. Ltd.

By_____
Jack A. Greenbaum (JG-0039)
405 Lexington Ave.
New York, N. Y. 10174
(212) 885-5000